892 A.2d 1173

**Emma BROWN, et al.**

v.

**MAYOR and City Council, et al.**

**No. 2734, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

Feb. 24, 2006.

Anton Iamele (Domenic R. Iamele, A. Dwight Pettit, Mitchell D. Treger, on the brief), Baltimore, for appellant.

Joshua N. Auerbach (Ralph S. Tyler, City Solicitor, William R. Phelan, Jr., Michael Fry, Chief Legal Counsel, on the brief), Baltimore, for appellee.

Panel: DEBORAH S. EYLER, KRAUSER, and RAYMOND G., THIEME, JR. (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, J.

In the Circuit Court for Baltimore City, relatives of the deceased Tristin Little, Sr. ("Little"), the appellants, sued the Mayor and City Council of Baltimore ("City") and the Baltimore City Police Department ("BCPD"), the appellees, for indemnification. Their claims arose out of the shooting death of Little by former BCPD Officer Rodney Price. Price pleaded guilty to first-degree murder of Little and use of a handgun in the commission of a crime of violence.

Thereafter, in a wrongful death and survival action, the appellants obtained a $26,989,000 judgment against Price. Price then assigned his "rights" to "indemnification" against the appellees to the appellants. The appellants brought the instant action, seeking to collect their judgment under a Memorandum of Understanding ("MOU") between the BCPD and the Fraternal Order of Police ("FOP"), and the Local Government Tort Claims Act ("LGTCA"). Md.Code (1974, 2002 Repl.Vol.), § 5–301 *et seq.* of the Courts and Judicial Proceedings Article ("CJ").

The circuit court granted a motion for summary judgment filed by the appellees. On appeal, the appellants ask whether the circuit court erred in doing so.[1]

## FACTS AND PROCEEDINGS

### *The Criminal Case*

Sometime in 2000, then BCPD Officer Price learned that his wife and Little were having an affair. He warned his wife to stay away from Little.

On the evening of March 15, 2001, between 9:30 and 10:00, Price's wife received a cell phone call from him. At the time, she was in the 5400 block of Cedonia Avenue in Baltimore City, where Little lived. She told Price that she would be on her way home. At the time, Price was getting ready to go to work on the night shift.

Price's wife left Little's house and walked to where her car was parked on Cedonia Avenue. As she got to her car, she dropped her key. She was looking for the key when Little came outside to help her. She stood back as Little bent down and tried to find the key.

In the meantime, Price left his house, drove to the neighborhood where Little lived, and parked his Ford Expedition out

---

1. The appellants frame the issues as follows:
    I.   Did the Trial Court err in allowing the Appellees to re-litigate the issue as to whether former BCPD Officer Rodney Price was acting within the scope of his employment at the time he responded with deadly force?
    II.  Did the Trial Court err in ruling that there was no genuine dispute of material fact regarding Officer Price's scope of employment when the evidence before the court clearly showed that Officer Price used deadly force as authorized by the orders and protocols of the BCPD and where Price had maintained throughout all legal proceedings that he responded with deadly force out of fear for his safety?
    III. Did the Trial Court err in granting Appellee BCPD's Motion to Dismiss or, in the alternative, for Summary Judgment where the LGTCA requires indemnification?
    IV.  Did the Trial Court err in ruling that there was no genuine dispute of material fact as to whether the MCC had a duty to indemnify under the MOU?

of view of Little's house. He then approached Little's house and saw his wife and Little outside, next to his wife's car.

Price, wearing his BCPD uniform, sneaked up on his wife and Little, and asked Little, "Didn't I tell you to stay away from my wife?" According to Price's wife, Price then began firing his service weapon at Little, hitting him with five to ten rounds. Little was on the ground, suffering from his wounds. Price had a brief conversation with his wife, holding her at gunpoint, and then resumed shooting Little, striking him with rounds that brought the total to 17, and killing him. (It appears that Price reloaded the weapon, although that is not clear from the record.)

In the Circuit Court for Baltimore City, Price was charged with first-degree murder and use of a handgun in the commission of a crime of violence. On January 14, 2002, he pleaded guilty to both counts. The prosecutor read into the record a lengthy description of what the State's witnesses would say if called to testify, and other evidence the State would present, if the case were tried. In addition to the facts we have recited above, the prosecutor described how Price fled after shooting Little; explained that ballistics and laboratory examinations showed that Price shot Little until Price's service weapon "locked back ... completely empty"; and described how Little was shot 17 times, including twice in the brain, six times in the head, and two times in the back.

The prosecutor's statement also recounted that Price was taken into custody, signed a form waiving his rights, and gave a statement to an officer. Price told the officer that he had walked over to his wife's car and told Little not to "mess with" her; that Little reached in the car and said "fuck you"; and that Price thought Little was "going for something," so he pulled out his service weapon and fired until it came to a "lock back."

Sentencing was held on April 24, 2002. In allocution, he said, "It's very difficult for me to [com]prehend what really happened because I know that wasn't me and I really don't have an explanation for it." The sentencing court remarked

that "[t]he facts in your case are not only murder in the first degree but the facts are heinous, cruel, pre-meditated, deliberate, and from the number of shots fired certainly intentional." Price was sentenced to life imprisonment, with all but 50 years suspended, for the first-degree murder. For the handgun offense, he was sentenced to ten years' imprisonment, to run concurrently with the sentence for first-degree murder.

### *Wrongful Death and Survival Action Case*

On February 25, 2002, in the Circuit Court for Baltimore City, the appellants filed a complaint for wrongful death and survival against Price, the City, then Baltimore Police Commissioner Edward Norris, and the State of Maryland. Among other claims, they set forth state constitutional torts under Articles 19, 24, and 26 of the Maryland Declaration of Rights, alleging that Price had acted "under color of law" in killing Little.

On July 1, 2002, the BCPD sent Price a letter stating that it would appoint and pay for his legal counsel in the civil suit, pursuant to the LGTCA, "as long as your actions are within the course and scope of employment as a Baltimore Police Department officer." The letter further stated that,

if the facts determine that you were not in the course and scope of your employment as a Baltimore Police Department officer, the duty to defend you would terminate.... In addition, the [BCPD] would not be liable for any judgments if the facts determine you were not within the scope of your employment.

Price's appointed counsel answered the appellant's complaint, raising various defenses, including qualified immunity. Price asserted throughout the civil case that he shot Little out of fear, because he thought Little was reaching for a weapon inside Price's wife's car. (There was no evidence that there was a weapon in that car, which also was registered in Price's name.)

The City, Commissioner Norris, and the State all moved to dismiss the claims against them. On October 17, 2002, the

court granted the City's motion on the ground that BCPD is a state agency and Price, therefore, was not a City employee. On May 16, 2003, it dismissed the Commissioner and the State on sovereign immunity grounds.

On October 14, 2003, with the appellants and Price being the only parties remaining in the suit, the appellants moved for partial summary judgment on liability. Price did not file an opposition or response to the motion. The court granted the motion. Three months later, the appellants filed another motion, also captioned as a motion for partial summary judgment, on the single issue of scope of employment. In that motion, the appellants argued that it was undisputed that Price was acting within the scope of his employment at the time of the shooting. Again, Price did not file an opposition or response to that motion.

The court heard argument on the motion and granted it:

Upon finding by the court that there is no genuine dispute of material fact, on the evidence presented to the court on this motion, on the issue that the defendant, Rodney Price was acting in the scope of his employment with the [BCPD] at the time he employed deadly force against the decedent Tristin D. Little, Sr. . . .

The case was tried to a jury on the issue of damages only. The jury returned a verdict in favor of the appellants in the amount of $105,000,000. The court reduced the verdict to $26,989,000, and entered judgment against Price in that amount.

On October 12, 2004, Price, who was judgment-proof, assigned to the appellants, in writing, "all his rights under the [MOU]." Article 15 of the [MOU] states:

Protection against liability shall be in keeping with Section 16–13 of the Code of Public Local Laws of Baltimore City.

However, legal counsel shall be provided in any civil case when the plaintiff alleges that a member [of the FOP] should be held liable for acts alleged to be within the scope of his employment and/or his official capacity. . . . Subject to

the fellow-employee exclusion provision and approval of the Board of Estimates, indemnification will also be provided to any member of the unit who is made a defendant in litigation arising out of acts within the scope of his or her employment.

Section 16–13 of the Public Local Laws of Baltimore City (1980) provides:

> In any case, civil or criminal, where a police officer of the [BCPD] is charged with the commission of any wrong, in consequence of an act done in the course of his official duty, the Police Commissioner may, when in his sole judgment the best interest of the public, and/or the [BCPD], and/or the police officer so charged would appear to warrant it, expend any funds under his control and jurisdiction which may have been appropriated either by the City Council of Baltimore or by the General Assembly of Maryland for the express purpose of reimbursing such officers for legal expenses incurred in defending against such charges...."

The BCPD is a party to the MOU, but the City is not.

The appellants made demand upon the City and the BCPD for payment of the judgment against Price. Both entities declined to pay. Price's counsel then struck his appearance from the wrongful death/survival action case, and the City notified Price that it would not maintain the costs of an appeal.

No appeal was taken by Price in the wrongful death/survival action case.

### The Indemnity Case

On November 17, 2004, again in the Circuit Court for Baltimore City, the appellants filed the instant action for indemnification. Their complaint sets forth three counts. Count I alleges breach of contract and indemnification against the City, based on the MOU. Count II alleges tortious breach of contract against the City. Count III seeks indemnification against the BCPD, apparently based on the MOU and/or the LGTCA. The LGTCA provides that, subject to certain limitations, "a local government shall be liable for any judgment

against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." CJ § 5–303(b). Although the BCPD is a state agency, *see BCPD v. Cherkes,* 140 Md.App. 282, 780 A.2d 410 (2001), it is a local government within the meaning of the LGTCA. C.J. § 5–301(d)(21).

On January 7, 2005, the appellees filed a joint motion to dismiss or, in the alternative, for summary judgment. They argued that both the City and the BCPD were entitled to judgment because, as a matter of law, Price was not acting within the scope of his employment when he murdered Little, issue preclusion (that is, collateral estoppel) does not apply to the scope of employment ruling in the wrongful death/survival action case, and any claims against them are barred by *res judicata* because they were dismissed from the wrongful death/survival action case; the City was entitled to judgment because it was not a party to the MOU and indemnification was not approved by the Board of Estimates, as required by the MOU; and the BCPD was entitled to judgment because, in the criminal case, Price had been adjudged to have acted with malice, which precludes indemnification under the LGTCA.

The court considered all materials submitted by the parties and heard arguments on February 7, 2005. In a ruling from the bench, the court stated:

The Court has reviewed the file and heard argument of counsel. It appears to the Court, and I so find, that reasons stated by the City's counsel in their motion for summary judgment should be granted.

At this juncture, the Court does not see that there is any dispute as to material fact or the inferences that could be drawn therefrom. Plaintiffs who are assignees of a judgment that was gotten against the murderer of a police officer [sic] have no right to collect that judgment from the City of Baltimore. Accordingly, summary judgment will be granted to the City, in favor of the City, and the case will be dismissed with the Plaintiff to pay the costs.

The court noted that the order would reflect that judgment was granted in favor of the BCPD, as well.

An order entering summary judgment was docketed on February 9, 2005. The appellants noted a timely appeal.

We shall state additional facts as necessary to our discussion of the issues.

## DISCUSSION

Under Maryland Rule 2–322(c), "[i]f, on a motion to dismiss ..., matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." In this case, matters outside the complaint were considered by the court, and hence the motion was treated as one for summary judgment.

Summary judgment is appropriate when there is no genuine dispute of material fact and, on the undisputed facts, a party is entitled to judgment as a matter of law. Md. Rule 2–501. This Court reviews a decision to grant summary judgment to determine whether the circuit court was legally correct. *Prince George's County v. Local Gov't Ins. Trust*, 388 Md. 162, 172, 879 A.2d 81 (2005). We consider the same materials as did the circuit court, and view the facts in the light most favorable to the non-moving party. *Vinogradova v. Suntrust Bank, Inc.*, 162 Md.App. 495, 505, 875 A.2d 222 (2005).

The appellants contend the circuit court erred in granting summary judgment because the question whether Price was acting within the scope of his employment when he killed Little has already been decided in the wrongful death/survival action case, in two ways: by the BCPD's decision to represent Price in that case and by the court's decision to grant partial summary judgment on the issue of scope of employment. They argue that both of those decisions have a preclusive effect in the present litigation and, therefore, the circuit court was bound to find that Price was acting within the scope of his employment when he killed Little. Because the MOU and the LGTCA each calls for indemnification when tortious acts are

committed within the scope of employment, the appellees were not entitled to judgment as a matter of law.

Alternatively, the appellants contend that the circuit court should have found that there was a genuine dispute of material fact about whether Price was, in fact, acting within the scope of his employment. They assert that Price was authorized by BCPD orders and protocol to use deadly force when in fear for his safety. They argue that, because Price asserted in the wrongful death/survival action case that he shot Little out of fear when Little reached inside the car, there was a genuine dispute of fact as to whether Price killed Little pursuant to BCPD policy, and therefore within the scope of his employment.

The appellees respond that neither BCPD's decision to provide legal representation for Price, nor the partial summary judgment granted on the scope of employment issue in the wrongful death/survival action case, has a preclusive effect in this litigation. They maintain that, although BCPD provided an attorney for Price, it made clear that any duty to represent or indemnify Price would end upon a determination that he was not acting within the scope of his employment. They also argue that the issue of scope of employment, which was decided on an unopposed motion because the appellees had been dismissed and Price had stipulated to the decision, was not actually litigated and therefore was not binding on them.

The appellees further respond that there is no genuine dispute of material fact as to whether Price was acting within the scope of his employment when he shot Little. They maintain that, under Maryland caselaw, Price's first degree murder of Little was outside the scope of his employment as a matter of law. They also argue that the BCPD policy regarding the use of deadly force applies only in cases of self-defense. Finally, they maintain that, given Price's guilty plea to first-degree murder, the appellants are estopped to assert, through Price, what amounts to a self-defense position in this case.

We disagree with the appellants that there were "legally binding determinations" in the wrongful death/survival action case that have a preclusive effect, in this case, on the issue of whether Price was acting within the scope of his employment when he killed Little.

■■■ With regard to BCPD's decision to furnish counsel for Price in the wrongful death/survival action case, the language of section 16–13 of the Code of Public Laws of Baltimore City does not state that, whenever the Police Commissioner decides that counsel will be appointed for an officer, that decision obligates the courts of this state to find that the officer was acting within the scope of his employment. Moreover, such an interpretation of section 16–13 would place unrestricted authority in the hands of an executive branch officer and defy separation of powers principles. The Commissioner's determination, therefore, can have no such binding effect.

Moreover, the letter BCPD sent to Price did not state that the Police Commissioner had determined that Price was acting within the scope of his duties. It stated just the opposite-that representation would terminate "if the facts determine that you were not in the course and scope of your employment as a Baltimore Police Department officer," and that BCPD "would not be liable for any judgments if the facts determine you were not within the scope of your employment." As we shall explain, there was no scope of employment finding in the wrongful death/survival action that bound any of the appellees under the MOU or the LGTCA.

The partial summary judgment on the issue of scope of employment granted in the wrongful death/survival action case does not have any preclusive effect in the instant case under principles of collateral estoppel or *res judicata.*

■■■ "Collateral estoppel is concerned with the issue implications of the earlier litigation of a different case, while *res judicata* is concerned with the legal consequences of a judgment entered earlier in the same cause." *Colandrea v. Wilde Lake Community Ass'n,* 361 Md. 371, 390–91, 761 A.2d 899 (2000). Under the doctrine of collateral estoppel, "[w]hen an

issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive· in a subsequent action between the parties, whether on the same or a different claim." *Murray Int'l Freight Corp. v. Graham*, 315 Md. 543, 547, 555 A.2d 502 (1989) (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)). The Court of Appeals has approved a four-part test that must be satisfied for the doctrine of collateral estoppel to apply:

1.   Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2.   Was there a final judgment on the merits?

3.   Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4.   Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Colandrea, supra,* 361 Md. at 391, 761 A.2d 899 (quoting *Washington Suburban Sanitary Comm'n v. TKU Assocs.,* 281 Md. 1, 18–19, 376 A.2d 505 (1977)). *See also Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (holding that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.").

■   *Res judicata,* or claim preclusion, applies when a proceeding between parties involves the same cause of action as a proceeding between the same parties in a prior case. Then, a judgment in the first case is conclusive in the second case as to all matters actually litigated or that could have been litigated in the first case. *Colandrea, supra,* 361 Md. at 388, 761 A.2d 899; *Alvey v. Alvey,* 225 Md. 386, 390, 171 A.2d 92 (1961).

■   Neither principle applies here. With respect to collateral estoppel, the appellees in this case were not parties to the wrongful death/survival action case when partial summary judgment was granted on the issue of scope of employment. They had been dismissed from that case on other grounds.

Consequently, they had no "full and fair opportunity" to litigate the scope of employment issue. *See Rourke v. Amchem Products, Inc.,* 384 Md. 329, 364, 863 A.2d 926 (2004) (citing *Welsh v. Gerber Products, Inc.,* 315 Md. 510, 555 A.2d 486 (1989)); RESTATEMENT (SECOND) OF JUDGMENTS, § 29 (1982). While the appellants maintain that the appellees could have remained in the wrongful death case to litigate the issue, the appellees were not required to do so. They were entitled to seek dismissal on any grounds and they apparently chose the most expansive ones—that Price was not an employee of the City and that BCPD was protected by sovereign immunity.

Moreover, the appellees were not in privity with any remaining party in the wrongful death/survival action case because there was no remaining party with whom they "share[d] the same incentive in their separate litigation attempts." *Warner v. German,* 100 Md.App. 512, 521, 642 A.2d 239 (1994). The appellees, had they still been parties, would have had opposing incentives to Price and the appellants on this issue. Their interest would have been in defeating the "scope of employment" motion, while Price, who stood to benefit from a finding that he was acting within the scope of his employment, because he therefore would not have to pay any judgment against him, was interested in prevailing on the motion, as were the appellants. Indeed, that is why Price and the appellants essentially stipulated to the motion's being granted.

We note, moreover, that determination of the scope of employment issue appears to have been completely unnecessary in the wrongful death/survival action case except to "set up" the instant case. Although the appellants argue that a determination that Price was acting within the scope of employment was necessary for a finding that Price acted under "color of law," scope of employment is not coextensive with the "color of law" element of a constitutional claim. The scope of employment includes only those actions authorized by the employer, while the "color of law" concept is broader. *Compare Sawyer v. Humphries,* 322 Md. 247, 255, 587 A.2d 467 (1991) (explaining that actions are within the common law scope of employment if the conduct is in furtherance of the

business of the employer and authorized by the employer), *with Screws v. U.S.*, 325 U.S. 91, 111, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) ("It is clear that under 'color' of law means under 'pretense' of law. . . . If, as suggested, the [federal] statute was designed to embrace only action which the State in fact authorized, the words 'under color of any law' were hardly apt words to express the idea.").

■ Furthermore, the issue of scope of employment was not actually litigated and finally adjudicated for purposes of collateral estoppel because the motion for partial summary judgment was completely unopposed. As discussed above, Price had no interest in defeating the motion. In order for an issue to be finally adjudicated, there must have been some dispute between the parties and a decision that resulted from adversarial proceedings. In *Welsh, supra*, 315 Md. 510, 555 A.2d 486, the Court of Appeals determined that the entry of a consent judgment in an automobile tort case did not result from a final adjudication of the issue of damages because the parties simply reached a compromise on the issue. The Court held, therefore, that the issue of damages in a subsequent case against the manufacturer of the child car seat in which the injured child was riding when the accident happened was not precluded by the judgment. Here, as in *Welsh*, the parties agreed to the entry of partial summary judgment and the court entered judgment on that basis. Such a judgment has no preclusive effect on subsequent litigation with a different party.

Finally, although the appellants argue that the appellees are bound by the judgment because of their status as indemnitors, that principle has no application here. In *Keitz v. National Paving and Contracting Co.*, 214 Md. 479, 136 A.2d 229 (1957), cited by the appellants, the Court of Appeals held that a company would be bound by a judgment against its employee if the employee was acting as a servant of the company at the time of the acts in question. In this case, whether the appellees are indemnitors under the LGTCA and MOU depends entirely on *whether Price was acting within the scope of*

*his employment.* To state that the appellees are bound by a judgment declaring that Price was acting within the scope of his employment *because they are indemnitors* is a perfectly circular argument. Accordingly, we find this contention without merit.

■ Obviously, given that the claims in the wrongful death/survival action case and in the indemnification case—*i.e.,* the case at bar—are not the same, the doctrine of *res judicata* has no application.

■ Because we have determined that the appellees are not bound by any scope of employment decision made in the previous civil litigation, we turn to the question of whether there is a genuine dispute of material fact as to whether Price was, in fact, acting within the scope of his employment when he shot Little. Although such an inquiry is ordinarily a question of fact for the fact-finder, when the facts are undisputed, it becomes a question of law. *Tall v. Bd. of School Comm'rs of Balt. City,* 120 Md.App. 236, 254, 706 A.2d 659 (1998).

■ The facts in the instant case are undisputed—that Price believed his wife was having an affair with Little; that he was off duty when he approached his wife and Little outside of Little's home; that he told Little to stay away from his wife; that Little was unarmed and Price did not know whether Little had access to a weapon; that when Little reached into Price's wife's car, Price shot him at least seventeen times, including several times in the back; and that Price pled guilty to first degree murder. We may, therefore, decide the issue as a question of law.

■ As noted above, a person's acts will be deemed within the scope of employment when they are taken in furtherance of the business of the employer and are authorized by the employer. The Court of Appeals stated in *Sawyer, supra,* 322 Md. at 256–57, 587 A.2d 467, that when

an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's

business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment.

The Court further explained that if " 'the conduct of the servant is unprovoked, highly unusual, and quite outrageous,' courts tend to hold 'that this in itself is sufficient to indicate that the motive was a purely personal one' and the conduct outside the scope of employment." *Id.* at 257, 587 A.2d 467 (quoting *Prosser and Keeton on the Law of Torts* § 70, at 506 (5th ed.1984)).

Cases involving the Maryland Tort Claims Act make clear that a police officer's personal acts are outside the scope of employment. For example, in *Sawyer, supra,* 322 Md. 247, 587 A.2d 467, an off-duty officer threw rocks at a motorist's car and physically assaulted the motorist, with no apparent law enforcement purpose. The Court held that he was not acting within the scope of his employment. In *Wolfe v. Anne Arundel County,* 374 Md. 20, 821 A.2d 52 (2003), an officer who made a traffic stop and then raped the female motorist was held to be acting outside the scope of his employment.

As in those cases, Price was not acting pursuant to his duties as a BCPD officer or in any way related to that position when he murdered Little. Instead, his actions were completely personal. The facts make plain that Price was upset about his wife's affair with Little. With planning, he approached Little with the intention of causing him harm. Price was not on duty, but was readied for work. He did not act in self-defense-he stated at his sentencing that he just did not know what came over him-but shot Little with malice, seventeen times. Even if he subjectively thought he was acting in self-defense, he did not act reasonably in shooting Little to death, simply because Little reached inside the car that was owned by Price and his wife. His tortious act was precisely the type of "highly unusual" and "quite outrageous" one that falls outside the scope of employment, as a matter of law. That Price was wearing his BCPD uniform at the time of the

shooting and shot Little with his service weapon did not transform an otherwise personal act into one that was furthering his employer's business.

The appellants maintain, however, that we cannot decide the scope of employment issue as a matter of law because there is a dispute of fact as to whether Price was acting pursuant to BCPD policy—*i.e.,* in self-defense. We think the undisputed facts clearly demonstrate that he was not, and the criminal cases make plain that the court can decide as a matter of law whether the evidence adduced supports self-defense such that the issue can properly go to the jury. *See, e.g., Street v. State,* 26 Md.App. 336, 338 A.2d 72 (1975).

Even if the issue of self-defense is a question of fact, which it is not, summary judgment would be required on the ground of judicial estoppel. Judicial estoppel is a doctrine designed to protect the integrity of the courts; for that reason, it can be raised *nostra sponte. See Gordon v. Posner,* 142 Md.App. 399, 424–33, 790 A.2d 675 (2002).

"Judicial estoppel, also known as the 'doctrine against inconsistent positions,' and 'estoppel by admission,' prevents 'a party who successfully pursued a position in a prior legal proceeding from asserting a contrary position in a later proceeding.' " *Gordon, supra,* 142 Md.App. at 424, 790 A.2d 675 (quoting *Roane v. Wash. County Hosp.,* 137 Md.App. 582, 592, 769 A.2d 263 (2001)). In the case at bar, the appellants are judicially estopped from arguing that Price acted in self-defense because Price admitted in his guilty plea in the criminal case that he committed first-degree murder. As Price's assignees, the appellants are bound by that admission. *See Wolfe v. Anne Arundel County,* 135 Md.App. 1, 761 A.2d 935 (2000), *aff'd,* 374 Md. 20, 821 A.2d 52 (2003) (observing that assignee had no greater rights to seek payment under county self insurance program than the police officer who assigned those rights).

Because, under Md.Code (2002), section 2–201 of the Criminal Law Article, first degree murder is an intentional, malicious homicide, Price's guilty plea necessarily negated any

claim of self-defense. Had he truly acted in self-defense, which is a complete defense to the crime, *see State v. Peterson*, 158 Md.App. 558, 585, 857 A.2d 1132 (2004), or in imperfect self-defense, which would mitigate his blameworthiness to manslaughter, *see Watkins v. State*, 79 Md.App. 136, 138, 555 A.2d 1087 (1989), he would have had an incentive to pursue those defenses in the criminal proceeding. He did not, and instead chose to plead guilty upon a statement of facts clearly establishing that the murder was premeditated, deliberate, and with malice. The appellants cannot now pursue a position clearly inconsistent with that plea. *See Eagan v. Calhoun*, 347 Md. 72, 88, 698 A.2d 1097 (1997) (holding that, when husband acknowledged in a separate proceeding that the killing of his wife was intentional, voluntary manslaughter, "the force of that estoppel allows the plea of guilty to stand unrebutted and thus to establish that the killing was a voluntary manslaughter"); *see also Lowery v. Stovall*, 92 F.3d 219 (4th Cir.1996) (holding that officer was estopped in civil litigation to argue anything inconsistent with his guilty plea); *Dorsey v. Ruth*, 222 F.Supp.2d 753 (D.Md.2002) (same).

■ Moreover, the appellants state in their brief that they successfully argued in the wrongful death/survival action case that Price killed Little maliciously. They concede that malice was a necessary element of their constitutional claim, but argue that because the law forced them to assert malice, the position they took in that case does not offend the doctrine of judicial estoppel. As the appellees correctly point out, however, the appellants turn the principle of estoppel on its head. They cannot argue that *because* proof of a particular element was essential to their claim, the position they took with respect to that element has no binding effect. On the contrary, that is precisely why it *does* have a binding effect.

We hold, as a matter of law, that Price was not acting within the scope of his employment when he killed Little. Because we have determined that Price acted outside the scope of his employment, thereby rendering the LGTCA and the MOU inapplicable, we need not consider any of the appellants' other

arguments. The circuit court properly entered summary judgment in favor of the appellees.

**JUDGMENT AFFIRMED.** **COSTS TO BE PAID BY APPELLANTS.**