943 A.2d 653

## MONTGOMERY COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES

v.

## TAMARA A.

No. 1575, Sept. Term, 2006.

Court of Special Appeals of Maryland.

March 5, 2008.

Sandra Barners (Douglas F. Gansler, Atty. General on the brief), Baltimore, for Appellant.

Loyd B. Hopkins, Frederick, for Appellee.

Panel: SALMON, BARBERA, JOSEPH F. MURPHY, JR.* JJ.

BARBERA, Judge.

The Montgomery County Department of Health and Human Services ("Department"), appellant, found Tamara A., appellee, to be responsible for indicated neglect of her daughter, Shirah. Ms. A. challenged that finding by requesting a contested case hearing at the Office of Administrative Hearings ("OAH"). The Department filed a motion to dismiss the administrative proceeding. The Department argued in the motion that the issue of whether Ms. A. had neglected Shirah had been fully litigated at a hearing in the Circuit Court for Montgomery County, at which the Department sought adjudication of Shirah as a Child in Need of Assistance ("CINA"). The Department represented in the motion to dismiss that the circuit court had declared Shirah a CINA based on a finding that Ms. A.'s conduct toward Shirah's older siblings placed Shirah's health or welfare at substantial risk of harm, and this Court affirmed the CINA determination.

The Administrative Law Judge ("ALJ") denied the motion to dismiss, and the Department filed a petition for judicial review of that decision. Ms. A. filed a motion to dismiss the petition for judicial review, arguing that the ALJ's ruling was not subject to immediate appeal to the courts. The Circuit Court for Montgomery County denied the motion to dismiss the petition but affirmed the ALJ's denial of the Department's motion to dismiss the request for a contested case hearing.

---

* Joseph F. Murphy, Jr., Associate Judge of the Court of Appeals, participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a specially assigned member of this Court.

The Department appealed to this Court and asks: "Did the ALJ err in refusing to give preclusive effect to a fully litigated finding in a CINA proceeding that Ms. A. neglected her daughter, Shirah?" Anticipating that Ms. A. would seek to have the appeal dismissed, the Department further asks: "Is the refusal of the [ALJ] to dismiss a contested case when the same parties have litigated the very same matter in court, ripe for judicial review?" As anticipated, Ms. A. has included in her brief a motion to dismiss the appeal.

For the reasons that follow, we deny the motion to dismiss the appeal and reverse the judgment of the circuit court, with the direction that the court remand the case to the OAH for entry of an order dismissing the contested case.

## BACKGROUND

### The CINA Determinations

Shirah has two older siblings, Nathaniel A. and Madeline C. On February 2, 2004, before Shirah was born, the Circuit Court for Montgomery County, the Honorable Katherine D. Savage presiding, adjudicated Nathaniel A. and Madeline C. each a CINA on the grounds that Ms. A. had abused both of them. Judge Savage specifically found that Ms. A. had subjected both Nathaniel and Madeline to needless medical appointments and procedures, and Ms. A. had forcefully broken Nathaniel's arm. Judge Savage also found that Ms. A. had an untreated psychological condition, which made her unable to provide her children with proper care and attention.

Shirah was born two months after that hearing and was placed in the immediate care of the Department. By notice dated June 9, 2004, the Department advised Ms. A. that, after an investigation, it determined her to be responsible for indicated child neglect of Shirah. Ms. A. requested a contested case hearing at the OAH. Meanwhile, the Department initiated proceedings to have Shirah, like her siblings, adjudicated a CINA. The contested case proceedings were stayed during the pendency of the CINA proceedings pursuant to

Maryland Code (1984, 2006 Repl.Vol.), § 5–706.1 of the Family Law Article ("FL").

The circuit court, the Honorable David A. Boynton presiding, adjudicated Shirah a CINA, based on Maryland Code (1973, 2006 Repl.Vol.), § 3–801(f) of the Courts and Judicial Proceedings Article ("CJP"), upon finding her to be a neglected child. Judge Boynton took judicial notice of the record developed at the February 2, 2004 CINA proceeding concerning Nathaniel and Madeline. Judge Boynton declared Shirah a CINA because "said Child's siblings have been abused and neglected and [Ms. A.] is unable or unwilling to give proper care and attention to the Child and her needs because: [Ms. A.] appears to suffer from a psychological disorder, which led to certain behavior causing risk of harm to her children, and that disorder remains untreated...."

## The Appeal of the CINA Determinations

Ms. A. separately appealed the judgments in the two CINA cases. This Court consolidated the appeals and filed a reported opinion affirming both judgments. *In re: Nathaniel A.,* 160 Md.App. 581, 864 A.2d 1066, *cert. denied,* 386 Md. 181, 872 A.2d 47 (2005). In that opinion, we considered Judge Savage's findings that Ms. A. had abused Nathaniel, the oldest child, by subjecting him to dozens of unnecessary medical appointments and procedures and breaking his arm by the intentional application of a great deal of force. *Id.* at 588–89, 864 A.2d 1066. We also considered Judge Savage's findings that Ms. A.'s "pattern of seeking medical intervention amounts to abuse, as defined in our CINA statutes, as well for Madeline[,]" and Madeline "is at significant risk of this pattern of excessive medical intervention[.]" *Id.* at 589, 864 A.2d 1066. We noted Judge Savage's further finding that "[Ms. A.'s] untreated psychiatric conditions as set forth by her own experts force me to conclude that she, too, is unable ... at this juncture, to give proper care and attention to her children and their needs." *Id.* We quoted Judge Savage's finding concerning the effect of Ms. A.'s mental state upon the welfare of Nathaniel and Madeline:

Whatever is motivating [Ms. A.], whatever malady, if there is one, that has caused her to behave as she has in the last 4.5 years with Nathaniel and Madeline, is sufficient, in my mind, call it what you will, it is sufficiently serious to cause a significant risk [of] harm to the children."

*Id.* at 590, 864 A.2d 1066.

Concerning Judge Savage's determination that Madeline, like Nathaniel, is a CINA, we said:

The circuit court's determination that Madeline was at a substantial risk of being subjected to the same conditions to which Nathaniel was exposed was not clearly erroneous. [Ms. A.] fractured Nathaniel's arm out of frustration and anger, subjected the child to forty-four unnecessary doctor visits, has a depression problem, and has sought no help nor shown any change in her conditions that would lead us to believe that Madeline would not be subject to the same harm to which Nathaniel was exposed. [Ms. A.'s] inability to appropriately care for Nathaniel is predictive of her ability to care for Madeline. We need not wait until Madeline is actually harmed; rather, based on the conduct of [Ms. A.] towards Nathaniel we may find her to be at risk and, therefore, a CINA.

*Id.* at 596–97, 864 A.2d 1066.

We upheld Judge Savage's determination that both Nathaniel and Madeline are CINAs.

We also upheld Judge Boynton's determination that Shirah is a CINA. We concluded, first, that Judge Boynton could rely on the record developed at the proceedings concerning Nathaniel and Madeline. We also considered the following facts. Ms. A. was a party to the earlier proceedings, was represented by counsel, and had the opportunity to defend herself through cross-examination of the local department's witnesses. The facts in Shirah's case were identical to the facts in the prior cases, and neither party demonstrated that the facts had improved since the prior hearings. The transcripts of the prior hearings were made part of the record, and Judge Boynton drew his own conclusions from that record. *Id.* at

598, 864 A.2d 1066. We observed in particular that, although "[t]he opportunity to present evidence of changed circumstances must be afforded to a parent," Ms. A. "did not avail herself of that opportunity in this case." *Id.* at 601, 864 A.2d 1066.

We then considered the merits of Judge Boynton's finding that Shirah, like her brother and sister, is a CINA. We recognized that, like Madeline's case, "Shirah's case [did] not focus on whether there was actual harm to her" but instead focused on whether, based on the prior conduct of [Ms. A.], Shirah "is at a 'substantial risk of harm,' which would mandate that the child be removed from the parent." *Id.* at 601, 864 A.2d 1066. We added:

> We must determine whether [Ms. A.'s] "ability to care for the needs of one child is probative of [her] ability to care for other children in the family." The child may be considered "neglected" before actual harm occurs, as long as there is "fear of harm" in the future based on "hard evidence" and not merely a "gut reaction."

*Id.* (internal citations omitted).

### The Contested Case Proceedings

Six months after we filed our opinion in *In re: Nathaniel A.*, the OAH vacated its stay of the contested case proceedings. The Department moved to dismiss the case on the grounds of collateral estoppel. The Department argued that the factual issue of whether Ms. A. had neglected Shirah had been fully litigated in the CINA proceeding, resulting in an order affirmed by this Court. Along with its motion to dismiss, the Department submitted Shirah's CINA petition, the May 13, 2004 Order of Adjudication finding her to be a CINA, and a copy of *In re: Nathaniel A.* The Department also attached the petitions and CINA orders related to Nathaniel and Madeline.

Ms. A. opposed the Department's motion to dismiss the contested case. She argued that the CINA finding involving Shirah was based solely on speculative risk of harm, and she

could not have been found to have neglected Shirah because she had not harmed or taken any action toward her daughter.

On April 20, 2006, the ALJ denied the Department's motion to dismiss. The ALJ found that Judge Boynton's decision declaring Shirah a CINA was not based on any "actual neglect," and the "implicit finding of neglect was a legal conclusion based upon [Ms. A.'s] past conduct towards Nathaniel and Madeline...." Evidently reasoning that a finding of indicated child neglect required a finding that Ms. A. had actually harmed Shirah, a fact not found by Judge Boynton, the ALJ concluded that the local department had not established that the factual issue to be litigated in the administrative hearing was litigated in the prior CINA proceeding.

The ALJ further reasoned that the two proceedings were not sufficiently similar in purpose for the doctrine of collateral estoppel to apply. The ALJ found that, although a CINA action is focused on the need to protect a child, an OAH proceeding is concerned with whether an individual's name could be entered on a "central registry" of child abusers and neglectors. The ALJ concluded:

> [T]he CINA finding as to Shirah in these circumstances, and the factual issues that would be litigated in this contested case proceeding, lack the quality of "sameness" that is necessary for the application of the doctrine of collateral estoppel. For the purposes of determining whether a child is in need of assistance, and should be removed from the home, a parent's ability to care for one child may be probative of the parent's ability to care for another child. *In re: William B.*, 73 Md.App. 68, 77, 533 A.2d 16 (1987). It cannot, however, be probative of acts that have not yet occurred.

The sections of the petition which were referenced in the juvenile court's disposition quoted above leave no doubt that the issue of whether [Ms. A.] is responsible for "indicated child neglect" of Shirah within the meaning of Md.Code Ann., Fam. Law § 5–701(m) and (r) was not litigated and decided in the CINA proceeding. The juvenile court's

determination was based on historical facts concerning Appellant's other two children and [Ms. A.'s] psychological problems, and on an assessment of risk of future harm, not of actual past harm, to Shirah. For these reasons, [Ms. A.] is not collaterally estopped from litigating the issue of her responsibility for indicated child neglect of Shirah, and the entry of her name in the central registry, in the present case.

The ALJ agreed to stay the OAH proceeding while the Department filed a petition for judicial review in the Circuit Court for Montgomery County pursuant to Maryland Code (1984, 2004 Repl.Vol., 2007 Supp.), § 10–222 of the State Government Article ("SG"). Ms. A. filed a motion to dismiss and opposed the petition on the sole grounds that the CINA finding could not bar her from challenging the finding that she was responsible for "indicated" neglect. After hearing argument and reviewing the record, the circuit court denied Ms. A.'s motion to dismiss the petition. The court, however, affirmed the ALJ's ruling on the collateral estoppel issue, reasoning that the "ALJ did not err in concluding as a matter of law that the doctrine of collateral estoppel does not apply to Respondent's administrative appeal[.]" The court ruled that Ms. A. was entitled to a hearing on the merits. The court issued an order remanding the case to the OAH for a merits hearing.

The Department filed this timely appeal.

## DISCUSSION

### I.

Ms. A. argues that the order is not subject to judicial review or appeal to this Court, so the appeal must be dismissed because the circuit court's order was a "non-final judgment and interlocutory order that did not decide the merits of the case, leaving that to be heard at the merits hearing on administrative appeal." We disagree.

■ A circuit court's order remanding a proceeding to an administrative agency is an appealable final order. *Schultz v. Pritts,* 291 Md. 1, 6, 432 A.2d 1319 (1981). "When a court remands a proceeding to an administrative agency, the matter reverts to the processes of the agency, and there is nothing further for the court to do." *Id.* Consequently, "such an order is an appealable final order because it terminates the judicial proceeding and denies the parties means of further prosecuting or defending their rights in the judicial proceeding." *Id.* The court's order remanding the case to the OAH for a merits hearing is properly before us.

Furthermore, the circuit court had jurisdiction to hear the Department's petition for judicial review of the ALJ's denial of the Department's motion to dismiss the contested case. Generally, a party must await the final decision in a contested case before seeking judicial review. *See* SG § 10–222(a). SG § 10–222(b), however, permits judicial review of an interlocutory order if: (1) the party seeking review would qualify for judicial review of a final decision; (2) the interlocutory order determines rights and liabilities and has immediate legal consequences; and (3) postponement of judicial review would result in irreparable harm.

■ We hold that SG § 10–222(b) entitles the Department to petition for judicial review of the denial of its motion to dismiss on collateral estoppel grounds. It is undisputed that the Department would be entitled to judicial review at the conclusion of the OAH contested case hearing. *See* SG § 10–222(b)(1). Moreover, the interlocutory order determined the parties' rights and liabilities and has the "immediate legal consequence" of forcing the Department to litigate a case that it may well have the right *not* to litigate. *See* SG § 10–222(b)(2)(i), (ii).

Likewise, forcing the Department to litigate the contested case before allowing it to obtain judicial review of its right not to litigate the case satisfies the requirement of "irreparable harm." *See* SG § 10–222(b)(2)(iii); *cf. Neal v. State,* 272 Md. 323, 326, 322 A.2d 887 (1974) (holding, in the criminal context,

that a defendant has the right of immediate appeal from the denial of a motion to dismiss a prosecution on double jeopardy grounds); *Convalescent Ctr. of Bloomfield, Inc. v. Dep't of Income Maint.*, 208 Conn. 187, 194–95, 544 A.2d 604 (1988) (finding the administrative denial of a claim of collateral estoppel to be analogous to denial of a defense of double jeopardy because both "invoke the right not to have to go to trial on the merits").

We hold that the Department had the right, under SG § 10–222(b), to seek judicial review in the circuit court of the ALJ's denial of the Department's motion to dismiss. The Department likewise had the right to appeal from the circuit court's judgment remanding the case to the OAH for a contested case hearing.

## II.

The Department contends that the ALJ erred in refusing to dismiss the case on the grounds of collateral estoppel. The Department argues that the issue of whether Shirah was neglected was fully litigated and properly resolved in its favor. We agree.

The doctrine of collateral estoppel applies if the following four questions are answered in the affirmative:

1. Was the issue decided in the prior adjudication identical to the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Colandrea v. Wilde Lake Cmty. Ass'n*, 361 Md. 371, 391, 761 A.2d 899 (2000). Under the collateral estoppel doctrine, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on

the same or a different claim." *Brown v. Mayor and City Council,* 167 Md.App. 306, 319–20, 892 A.2d 1173 (2006) (citations omitted). A party against whom collateral estoppel is asserted need not have controverted an issue and presented evidence; the party need only have had an opportunity to contest an issue that was, in fact, resolved by a final judgment. *See Colandrea,* 361 Md. at 391, 761 A.2d 899. Moreover, the prior and current proceedings do not have to be the same; all that must be determined is that the fact or issue presently in question was decided at the prior proceeding. *See John Crane, Inc. v. Puller,* 169 Md.App. 1, 24–25, 899 A.2d 879 (2006) (citing cases for collateral estoppel to apply, a party must establish only that an identical fact or issue was actually litigated and decided in the prior proceeding, regardless of the cause of action or claim).

There is no dispute in the present case that three of the four requirements of the doctrine of collateral estoppel have been satisfied. First, the Circuit Court for Montgomery County's judgment that Shirah was a CINA was affirmed by this Court in *In re: Nathaniel A.,* satisfying the requirement that there be a final judgment on the merits. Second, Ms. A.—the party against whom collateral estoppel was asserted— was a party in the CINA proceeding, satisfying the requirement of party identity. Third, Ms. A. had the opportunity to defend the CINA determination at the hearing at which the court declared Shirah to be a CINA. *See In re: Nathaniel A.,* 160 Md.App. at 598, 864 A.2d 1066.

The dispute in this case as to whether the collateral estoppel doctrine applies centers on the remaining factor, which requires that "the issue decided in the prior adjudication [be] identical with the one presented in the action in question." *Brown,* 167 Md.App. at 320, 892 A.2d 1173. We must decide if the issue Ms. A. presents in the contested case proceeding— whether she is responsible for "indicated child neglect" of Shirah as defined in FL § 5–701—is the same as the issue that was decided when Shirah was adjudicated a CINA upon a finding that Ms. A. neglected her.

A Child in Need of Assistance is a child who requires court intervention because: (1) the child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and (2) the child's parent, guardian, or custodian is unable to or unwilling to give proper care and attention to the child and the child's needs. CJP § 3–801(f). "Neglect," under CJP § 3–801, is defined as

the leaving of a child unattended or other failure to give proper care and attention to a child by any parent or individual who has permanent or temporary care or custody or responsibility for supervision of the child under circumstances that indicate:

(1) That the child's health and welfare is *harmed or placed at substantial risk of harm;* or

(2) That the child has suffered mental injury or been placed at substantial risk of mental injury.

CJP § 3–801(s) (emphasis added).

■ At Shirah's CINA hearing, Judge Boynton found that Shirah is a CINA because Ms. A. placed her at "substantial risk of harm." We made that point quite clear in *In re: Nathaniel A.* We recognized that, like her sister Madeline's case, "Shirah's case [did] not focus on whether there was actual harm to her" but instead focused on whether, based on the prior conduct of [Ms. A.], Shirah "is at a 'substantial risk of harm,' which would mandate that the child be removed from the parent." *In re: Nathaniel A.,* 160 Md.App. at 601, 864 A.2d 1066. We held that Ms. A.'s inability to care for Nathaniel and Madeline provided legally sufficient evidence that Ms. A. placed Shirah at a substantial risk of harm. The juvenile court's factual finding, which we affirmed, established that Ms. A. is neglecting Shirah, as that term is defined in CJP § 3–801(s).

"Neglect," for purposes of finding a person responsible for indicated child neglect, is defined in precisely the same terms as in the CINA statute. FL § 5–701(s) provides:

the leaving of a child unattended or other failure to give proper *care and attention to a child by any parent or other*

person who has permanent or temporary care or custody or responsibility for supervision of the child under circumstances that indicate:

(1) that the child's health or welfare *is harmed or placed at substantial risk of harm;* or

(2) mental injury to the child or a substantial risk of mental injury.

(Emphasis added).

Judge Boynton's finding that Shirah is a CINA because Ms. A. neglected her by "plac[ing] her at substantial risk of harm," is identical to the Department's finding that Ms. A. is responsible for indicated neglect of Shirah. A finding of "indicated" means "that there is credible evidence, which has not been satisfactorily refuted, that abuse, *neglect,* or sexual abuse did occur." FL § 5–701(m) (emphasis added). Though the law grants Ms. A. the right to a contested case hearing to have the ALJ decide whether that standard has been satisfied, Ms. A. is not entitled to have the finding of neglect decided anew.

We disagree with the ALJ's reasoning that the issue to be determined at the contested case hearing and the issue that was decided at the CINA proceeding lack the quality of sameness. To begin, the ALJ was wrong to say that Judge Boynton's finding Shirah a CINA was not based on "actual neglect." Judge Boynton found that Shirah was placed by Ms. A. at "substantial risk of harm," which is a form of neglect under both the CINA statute and the indicated child abuse statute. Therefore, Judge Boynton's finding of neglect at the CINA proceeding is identical to the Department's finding of indicated child neglect that Ms A. seeks to undo at the contested case hearing. To the extent that the ALJ believed that a finding of indicated child neglect can be sustained only if there is credible, unrefuted evidence that the individual against whom the finding is made has actually harmed the child, that belief is belied by the statute.

We also disagree with the ALJ's reasoning that a CINA hearing and an administrative agency's finding of indicated child neglect are not sufficiently similar in purpose for the

doctrine of collateral estoppel to apply. Collateral estoppel does not require that the prior and present proceedings have the same purpose, nor does it mandate that the statutes upon which the proceedings are based have the same goals.[1] The relevant question is whether the fact or issue was actually litigated and decided in a prior proceeding, regardless of the cause of action or claim. *Crane,* 169 Md.App. at 24, 899 A.2d 879. If the answer to that question is yes, then, assuming that the remaining factors of the doctrine have been met, collateral estoppel bars re-litigation of the issue.

We hold that the issue to be decided at the contested case hearing—whether Ms. A. is responsible for indicated neglect of Shirah because there is credible evidence, not satisfactorily refuted, that she has put Shirah at substantial risk of harm—is the same issue that was decided against Ms. A. at the CINA proceeding before Judge Boynton. The identity-of-issue requirement of collateral estoppel, like the remaining three requirements, is met in this case. Consequently, Ms. A. is barred from litigating at the contested case hearing the Department's finding that she is responsible for indicated child neglect of Shirah, and the Department was entitled to have the ALJ grant its motion to dismiss the contested case. We therefore reverse the judgment of the circuit court affirming the ALJ's denial of that motion, and we remand the case to that court with instructions to remand the case to the OAH for entry of dismissal of the contested case.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR MONTGOMERY COUNTY WITH INSTRUCTIONS TO REVERSE THE ORDER OF**

---

1. The ALJ may be correct (a matter we do not decide) that the General Assembly had different purposes in mind when enacting the CINA and indicated child abuse and neglect statutes. The ALJ posited that the focus of the CINA statute is upon the child, with the purpose of protecting him or her from future harm from the abuser or "neglector"; and the focus of the indicated child abuse and neglect statute is upon the indicated child abuser or "neglector," with the purpose of preventing that person from harming children in the future. Assuming the correctness of the ALJ's view, any differences in legislative purpose do not bear on the issue we decide in this case.

702

THE ADMINISTRATIVE LAW JUDGE DENYING THE MOTION TO DISMISS AND REMAND THE CASE TO THE OFFICE OF ADMINISTRATIVE HEARINGS WITH DIRECTIONS TO DISMISS THE CONTESTED CASE.

COSTS TO BE PAID BY APPELLEE.