24 A.3d 199

**DEPARTMENT OF HUMAN RESOURCES, Allegany County Department of Social Services**

v.

**Johnette COSBY.**

**No. 256, Sept. Term, 2010.**

Court of Special Appeals of Maryland.

July 11, 2011.

56

Sandra I. Barnes (Douglas F. Gansler, Atty. Gen. on the brief), Baltimore, MD, for Appellant.

Ramon Rozas, Cumberland, MD, for Appellee.

Panel: DEBORAH S. EYLER, WOODWARD and GRAEFF, JJ.

WOODWARD, J.

In this appeal, the Department of Human Resources, Allegany County Department of Social Services ("the Department"), appellant, seeks to uphold the decision of the Office of Administrative Hearings ("OAH") that dismissed appellee Johnette Cosby's appeal of the Department's finding that she was responsible for indicated child neglect of her adoptive son, Michael.[1] Cosby sought to challenge the Department's finding of indicated child neglect in an appeal before the OAH. In a prior Child in Need of Assistance ("CINA")[2] proceeding, the Circuit Court for Allegany County found Cosby responsible for neglect of Michael. In the OAH proceeding, the Department filed a motion to dismiss Cosby's appeal based on collateral estoppel. The OAH administrative law judge ("ALJ") granted the Department's motion to dismiss, and Cosby filed a petition for judicial review in the circuit court. The court reversed the OAH's decision to dismiss Cosby's appeal.

In the instant appeal, the Department presents one question for review by this Court, which we have rephrased: Where there was a prior finding of child neglect in a CINA case to which Cosby was a party, did the ALJ err in a subsequent administrative proceeding when he granted the Department's motion to dismiss Cosby's appeal of the Department's finding of indicated child neglect based on collateral estoppel?

---

1. Under Maryland Code (1984, 2006 Repl.Vol.), § 5–701(m) of the Family Law Article ("F.L."), an individual is found responsible for indicated child neglect where "there is credible evidence, which has not been satisfactorily refuted, that abuse, neglect, or sexual abuse did occur."

2. A child in need of assistance ("CINA") means a "child who requires court intervention because: (1) The child has been abused, has been neglected, has a developmental disability, or has a mental disorder; and (2) The child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs." Maryland Code (1974, 2006 Repl.Vol.), § 3–801(f) of the Courts and Judicial Proceedings Article.

For the reasons set forth herein, we shall uphold the OAH's decision and thus reverse the judgment of the circuit court.

## BACKGROUND

On October 7, 2008, the Department notified Cosby that, after it had conducted a "Child Protective Services investigation," the Department found her responsible for indicated child neglect. According to the Department's "Child Neglect Report," Cosby's case was being recorded as "an INDICATED CHILD NEGLECT," because there was a "current instance of failure to give proper care and attention to the child, and the nature, extent, or cause indicate [d that] the child's health or welfare was harmed or placed at substantial risk of harm." Specifically, the Department reported that, on September 23, 2008, Cosby's adoptive son, Michael, "got into a verbal altercation with [Cosby]'s live-in paramour ... [that] became physical in nature; however, no injuries were left on either party." At the time of the incident, Michael was 17 years old and two weeks away from turning 18. Cosby advised the Department that she did not want Michael to return to her home and was not open to work with the Department on this matter. The Department had arranged for Michael to live with another family at that time and after he turned 18. Cosby, however, refused to allow this arrangement and advised that she wanted Michael placed in foster care "as a punishment." Because Cosby, as Michael's sole legal custodian, refused to allow Michael to "come back home," the Department placed Michael into foster care.

On October 8, 2008, after a shelter care hearing, the circuit court granted shelter care and placed Michael in the temporary care and custody of the Department. After an adjudication hearing on October 17, 2008, the master sustained the allegations in the Department's petition that Cosby was responsible for neglect of Michael. The circuit court ratified the report of the master on November 10, 2008. After a disposition hearing before the master, the circuit court adjudicated Michael CINA in an order dated December 15, 2008. Cosby

did not appeal the court's determination that Michael was CINA.

Before Michael was adjudicated CINA, Cosby filed a "Contested Case Hearing—Request Form" with the OAH on December 1, 2008, in which she appealed the Department's finding that she was responsible for indicated child neglect, pursuant to Maryland Code (1984, 2006 Repl.Vol.), § 5–706.1 of the Family Law Article ("F.L."). In her appeal, Cosby stated that "[t]here was insufficient evidence to make and [sic] indicated finding;" "there was no neglect as a matter of law and fact and [ ] the Department erred in making an indicated finding."

On February 23, 2009, at a hearing before the ALJ, the Department made an oral motion to dismiss, arguing that the case should be dismissed on the basis of collateral estoppel because of a previous CINA case that involved Cosby and Michael. The ALJ did not rule on the motion and instructed the Department to file a written motion.

In a written motion to dismiss dated March 6, 2009, the Department contended that Cosby's appeal must be dismissed, because (1) it was a necessary condition precedent to a finding of CINA that the court find that the child had been neglected; (2) the court adjudicated Michael CINA and thus the issue of neglect was decided in the prior CINA litigation; (3) Cosby was properly before the court, had the benefit of counsel, and the opportunity to be heard on the issue during the CINA proceeding; (4) the finding of CINA was a final judgment; and (5) the CINA case involved the same parties as in the appeal before the OAH. The Department concluded that Cosby thus was "precluded from re-litigating the issue of neglect."

The Department further asserted that F.L. § 5–706.1 "d[id] not bar the applicability of the doctrine of collateral estoppel." Although acknowledging the deletion of a provision in F.L. § 5–706.1 that had required dismissal of an appeal of a finding of indicated neglect where the child had been found CINA, the Department contended that the change in law "d[id] not reflect a legislative determination that a CINA finding may

not preclude a subsequent hearing on a finding of child abuse or neglect."

In an order dated March 25, 2009, the ALJ granted the Department's motion to dismiss. The ALJ found that (1) the parties in the present case and the CINA proceeding are identical; (2) Cosby had a full opportunity at the CINA hearing to litigate whether she was responsible for neglect; (3) the issue litigated in the CINA proceeding was identical to the issue in the appeal before the OAH; and (4) there was no evidence that Cosby had appealed the CINA findings. Relying on *Montgomery County Department of Health and Human Services v. Tamara A.,* 178 Md.App. 686, 943 A.2d 653 (2008) (*"Tamara A. I "*), *rev'd on other grounds,* 407 Md. 180, 963 A.2d 773 (2009), the ALJ concluded that Cosby's request for a hearing to challenge the Department's finding that she was responsible for indicated child neglect was barred by collateral estoppel. Thus the ALJ affirmed the Department's finding of indicated child neglect.

On April 2, 2009, Cosby filed a motion to reconsider, and the Department filed a response. In an order dated May 14, 2009, the ALJ acknowledged that, in *Tamara A. v. Montgomery County Department of Health and Human Services,* 407 Md. 180, 963 A.2d 773 (2009) (*"Tamara A. II "*), the Court of Appeals reversed *Tamara A. I.* The ALJ, however, agreed with the Department that the reasoning in *Tamara A. I* as to the application of the collateral estoppel doctrine was still good law, because, according to the ALJ, the Court of Appeals had reversed *Tamara A. I* on the grounds that "neither the Circuit Court nor the Court of [Special] Appeals had jurisdiction to hear the 'interlocutory' appeal filed by the Montgomery County Department of Health and Human Services." The ALJ thus concluded that as a matter of law, Cosby's challenge to the Department's finding that she was responsible for indicated neglect was barred by collateral estoppel.

On April 22, 2009, Cosby filed a petition for judicial review in the circuit court. Cosby argued that the ALJ's decision to grant the Department's motion to dismiss "was arbitrary,

unreasonable, unsupported by substantial evidence, and not a valid exercise of its discretion." After a hearing on January 25, 2010, the court signed a Memorandum and Order on March 5, 2010, reversing the ALJ's granting of the Department's motion to dismiss and remanding the case for further proceedings. The court determined that "the ALJ's reliance upon the analysis and holding of *Tamara A. [I]* was inappropriate in light of the Court of Appeals reversal," and that from a reading of the statute and the Court of Appeals' dicta in *Tamara A. II,* Cosby "was entitled to further proceedings on her appeal."

The Department filed a timely notice of appeal to this Court. Additional facts will be set forth below as necessary to resolve the question presented.

## DISCUSSION

To begin, Cosby concedes that, if the defense of collateral estoppel can be raised by the Department in the case *sub judice,* then Cosby is precluded from challenging the Department's finding that she was responsible for indicated neglect of Michael. Therefore, the only issue before us on appeal is whether the defense of collateral estoppel is available to the Department in a F.L. § 5–706.1 proceeding.

### The Parties' Contentions

The Department argues that, under the doctrine of collateral estoppel, Cosby is barred from relitigating the issue of neglect after she had already been found responsible for neglect in the CINA proceeding. According to the Department, Cosby argues that the doctrine of collateral estoppel does not apply to the instant case, because the General Assembly "signaled its intent that a CINA finding would not preclude an administrative challenge to a finding of child abuse or neglect" when it "removed the requirement [from F.L. § 5–706.1] that OAH dismiss an appeal if a child was found CINA, and it instead directed OAH to 'schedule further proceedings.'" Relying on a letter written by former OAH Chief Administrative Law Judge John W. Hardwicke, the

Department contends that F.L. § 5–706.1 was amended to "correct an unintended consequence" of the original F.L. § 5–706.1, "which was that appellants who were . . . not parties to the CINA proceeding[ ] were being foreclosed by the CINA finding from ever challenging the finding of abuse or neglect." The Department further contends that, if this Court were "to interpret the amendments as [ ] Cosby argues, the Court would be reading into the [statute] a legislative intent to foreclose application of the common law doctrine of collateral estoppel." Finally, according to the Department, *Tamara A. II* does not support Cosby's position, because the Court of Appeals stated in *Tamara A. II* that "a CINA determination does 'not necessarily preclude a collateral estoppel defense in a proper case.' " The Department maintains that the case *sub judice* is such "proper case."

Cosby responds that F.L. § 5–706.1 should be interpreted based on the "plain language of the statute," [3] and not "outside opinion letters." Cosby asserts that, "[i]f the legislature had wished to address merely Judge Hardwick[e]'s narrow point, the language used could have simply allowed an exception for non-parties to the CINA case," but the legislature instead deleted the "entire preclusion clause" from F.L. § 5–706.1. Cosby further argues that, although the Court of Appeals in *Tamara A. II* recognized that F.L. § 5–706.1 " 'did not necessarily preclude a collateral estoppel defense in a proper case,' . . . the Court clearly suggested that Tamara A.'s position was not such a proper case[ ] and Tamara A's procedural posture is identical with [Cosby's position]." (Emphasis omitted). According to Cosby, "it appears clear that the Court of Appeals has expressed a view that [F.L. §] 5–706.1 leans against collateral estoppel."

## Analysis

In interpreting a statute,

---

3. At oral argument before this Court, Cosby acknowledged that the language of F.L. § 5–706.1 is ambiguous on the applicability of the doctrine of collateral estoppel.

[o]ur predominant mission is to ascertain and implement the legislative intent, which is to be derived, if possible, from the language of the statute (or Rule) itself. If the language is clear and unambiguous, our search for legislative intent ends and we apply the language as written and in a commonsense manner. We do not add words or ignore those that are there. If there is any ambiguity, we may then seek to fathom the legislative intent by looking at legislative history and applying the most relevant of the various canons that courts have created.

*Downes v. Downes,* 388 Md. 561, 571, 880 A.2d 343 (2005).

In resolving ambiguity in a statute, we may, and often must, resort to other recognized indicia—among other things, the structure of the statute, including its title; how the statute relates to other laws; the legislative history, including the derivation of the statute, comments and explanations regarding it by authoritative sources during the legislative process, and amendments proposed or added to it; the general purpose behind the statute; and the relative rationality and legal effect of various competing constructions.

*Witte v. Azarian,* 369 Md. 518, 525–26, 801 A.2d 160 (2002).

At issue in the case *sub judice* is the interpretation of F.L. § 5–706.1 and, specifically, whether F.L. § 5–706.1 allows for the application of the doctrine of collateral estoppel. F.L. § 5–706.1 provides in relevant part:

(a) *Notice.*—Within 30 days after the completion of an investigation in which there has been a finding of indicated or unsubstantiated abuse or neglect, the local department shall notify in writing the individual alleged to have abused or neglected a child:

(1) of the finding;

(2) of the opportunity to appeal the finding in accordance with this section; and

(3) if the individual has been found responsible for indicated abuse or neglect, that the individual may be identified in a central registry as responsible for abuse or

neglect under the circumstances specified in § 5–714(e) of this subtitle.

(b) *Hearing to appeal finding of indicated abuse or neglect.—*

(1) In the case of a finding of indicated abuse or neglect, an individual may request a contested case hearing to appeal the finding in accordance with Title 10, Subtitle 2 of the State Government Article by responding to the notice of the local department in writing within 60 days.

\* \* \*

(4)(i) If a CINA case is pending concerning a child who has been allegedly abused or neglected by the appellant or a child in the care, custody, or household of the appellant, the Office of Administrative Hearings shall stay the hearing until the CINA case is concluded.

(ii) After the conclusion of the CINA case, the Office of Administrative Hearings shall vacate the stay and schedule further proceedings in accordance with this section.

In sum, the plain language of F.L. § 5–706.1 provides that an individual found responsible for indicated or unsubstantiated abuse or neglect may request a contested case hearing in accordance with the Administrative Procedure Act, Maryland Code (1984, 2009 Repl.Vol.), §§ 10–201, *et seq.,* of the State Government Article. The statute, however, does not say whether the doctrine of collateral estoppel can be raised in a F.L. § 5–706.1 proceeding. In other words, the statute is ambiguous as to whether collateral estoppel is available to a litigant at such proceeding. Thus we will look to the statute's legislative history to determine the legislative intent for F.L. § 5–706.1. *See Downes,* 388 Md. at 571, 880 A.2d 343.

## I.

### F.L. § 5–706.1's Legislative History

When enacted in 1993, the language in F.L. § 5–706.1 differed from the current version of F.L. § 5–706.1 regarding

when an individual could appeal from a finding of indicated or unsubstantiated abuse or neglect. In 1993, F.L. § 5–706.1 stated in relevant part:

(a) Within 30 days after the completion of an investigation in which there has been a finding of indicated or unsubstantiated abuse or neglect, the local department shall notify in writing the person alleged to have abused or neglected a child:

(1) of the finding; and

(2) **except when a CINA petition has been filed involving the child alleged to be abused or neglected,** that the person may request an administrative hearing to appeal the finding.

(b) **Within 30 days of a dismissal of a CINA petition,** the local department of social services shall notify in writing the person alleged to have abused or neglected a child that the person may request an administrative hearing to appeal an indicated or unsubstantiated finding.

(Emphasis added).

The originally enacted version of F.L. § 5–706.1 thus did not allow an individual to appeal from a finding of indicated or unsubstantiated abuse or neglect when a CINA petition had been filed involving the child alleged to have been abused or neglected unless the CINA petition was dismissed.

In 1995, the General Assembly amended F.L. § 5–706.1 "[f]or the purpose of altering the procedures applicable to child abuse and neglect hearings that involve a . . . CINA[ ] proceeding." *See* H.B. 791, 1995 Leg., 409th Sess. (Md.1995). House Bill 791 stated in relevant part: [4]

5–706.1

(a) Within 30 days after the completion of an investigation in which there has been a finding of indicated or unsubstantiated abuse or neglect, the local department shall

---

4. The text in capital letters indicates language added and text in brackets indicates language deleted from the 1993 version of F.L. § 5–706.1.

notify in writing the person alleged to have abused or neglected a child:

(1) of the finding; and

(2) [except when a CINA petition has been filed involving the child alleged to be abused or neglected,] that the person may request an administrative hearing to appeal the finding.

[ (b) Within 30 days of a dismissal of a CINA petition, the local department of social services shall notify in writing the person alleged to have abused or neglected a child that the person may request an administrative hearing to appeal an indicated or unsubstantiated finding.]

[ (c) ] (B) A person may request an administrative hearing by responding to the notice of the local department of social services in writing within 60 days.

\* \* \*

(H) (1) IF A CINA PROCEEDING IS PENDING CONCERNING A CHILD WHO HAS BEEN ALLEGEDLY ABUSED OR NEGLECTED BY THE APPELLANT OR A CHILD IN THE CARE, CUSTODY, OR HOUSEHOLD OF THE APPELLANT, THE OFFICE OF ADMINISTRATIVE HEARINGS SHALL STAY THE HEARING UNTIL THE CINA PROCEEDING IS CONCLUDED.

(2) AFTER THE CONCLUSION OF THE CINA PROCEEDING, THE OFFICE OF ADMINISTRATIVE HEARINGS SHALL VACATE THE STAY AND SCHEDULE FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS SECTION AND § 5–706.2 OF THIS SUBTITLE.

In sum, the General Assembly deleted the provision that prohibited individuals found responsible for indicated or unsubstantiated abuse or neglect from requesting an administrative hearing to appeal such finding unless the CINA petition had been dismissed. *Id.* The General Assembly also added subsections (h)(1) and (h)(2), which required the OAH to stay the administrative hearing during the pendency of a CINA proceeding and, at the conclusion of the CINA proceeding, to

"schedule further proceedings" regarding the individual's appeal. *Id.*

Cosby contends that the General Assembly's adoption of House Bill 791 "swept the whole preclusion clause away" and thus "eliminat[ed] collateral preclusion" in a F.L. § 5–706.1 hearing occurring after a CINA proceeding. Nowhere, however, in the legislative history of House Bill 791 does the General Assembly indicate that its intent was to prohibit the application of the doctrine of collateral estoppel. We shall explain.

The General Assembly's Department of Fiscal Services' Fiscal Note for House Bill 791 states:

> This [ ] bill allows a person involved in a Child in Need of Assistance (CINA) proceeding to appeal to the Office of Administrative Hearings (OAH) a finding of indicated or unsubstantiated child abuse or neglect after the CINA proceeding has concluded. At present, a person involved in a CINA proceeding may only appeal a finding of child abuse or neglect if the CINA proceeding was dismissed.

Fiscal Note Revised, Dep't of Fiscal Servs., H.B. 791, 1995 Leg., 409th Sess. (Md.1995).

Similarly, the Bill Analysis for House Bill 791 prepared by the Senate Judicial Proceedings Committee of the General Assembly provides:

> **BACKGROUND:**
>
> Under current law, a person alleged to have abused or neglected a child may appeal a finding of indicated or unsubstantiated child abuse or neglect. However, if a CINA petition has been filed involving the child alleged to be abused or neglected, the person may appeal to the OAH only if the CINA proceeding is dismissed.
>
> This bill provides a person alleged to have abused or neglected a child with the ability to appeal a finding regardless of whether the CINA proceeding is dismissed or otherwise concluded, unless the person is convicted of a criminal offense arising from the alleged abuse or neglect.

Bill Analysis, Senate Judicial Proceedings Comm., H.B. 791, 1995 Leg., 409th Sess. (Md.1995).

The rationale underlying House Bill 791 was set forth succinctly by then Chief Administrative Law Judge Hardwicke, in a letter dated March 24, 1995, to Senator Walter M. Baker, Chair of the Senate Judicial Proceedings Committee:

Dear Chairman Baker:

The Office of Administrative Hearings supports HB 791....

HB 791 corrects an oversight in the existing law governing child abuse and neglect hearings. Current law permits the HB 617 hearing to proceed only if the CINA proceeding is dismissed. If a child is adjudicated CINA, OAH has no authority to proceed with the hearing. This has caused some difficulties, particularly when the appellant for the HB 617 hearing is not involved in the CINA proceeding or when the matters at issue in the HB 617 hearing are not adjudicated or resolved during the CINA proceeding.

For example, a child is adjudicated CINA due to the neglect of the mother, but the mother's boyfriend has appealed the local department's identification of him as an alleged abuser in an indicated or unsubstantiated sex abuse finding. Under existing law, the boyfriend's HB 617 hearing cannot proceed because the CINA proceeding was not dismissed even though the sex abuse issue may never have been discussed during the CINA proceeding. With the passage of HB 791, OAH would be able to proceed with the boyfriend's HB 617 hearing after the CINA proceeding concludes.

The legislative history of F.L. § 5–706.1 thus makes clear that the purpose of the 1995 amendment, as set forth in House Bill 791, was to address the inequity created by F.L. § 5–706.1. Such inequity occurred when an individual was denied the right to appeal the Department's finding of indicated or unsubstantiated abuse or neglect, because the child alleged to be abused or neglected was determined to be CINA, even though the specific issue of abuse or neglect involving the

individual was not litigated in the CINA proceeding or the individual was not a party to the CINA proceeding. Having reviewed the entirety of the bill file for House Bill 791, we have found no evidence that the General Assembly intended F.L. § 5–706.1, as amended, to prohibit the Department from raising the defense of collateral estoppel or to prevent the OAH from dismissing an individual's appeal because the appeal was precluded under the doctrine of collateral estoppel. If the General Assembly had intended to prohibit the applicability of the doctrine of collateral estoppel, it would have said so.

Moreover, the application of the doctrine of collateral estoppel in a F.L. § 5–706.1 proceeding is not inconsistent with the purpose of House Bill 791. As previously indicated, F.L. § 5–706.1, as originally enacted, precluded an individual from challenging a finding of indicated or unsubstantiated abuse or neglect when the child alleged to have been abused or neglected had been determined to be a CINA. Chief Administrative Law Judge Hardwicke pointed out that such statutory language "caused some difficulties," especially when the appellant was not involved in the CINA proceeding "or when the matters at issue in the [F.L. § 5–706.1] hearing are not adjudicated or resolved during the CINA proceeding." Those types of cases would not be affected by an interpretation of F.L. § 5–706.1 allowing the application of the doctrine of collateral estoppel, for the simple reason that the requirements for the application of collateral estoppel would not be satisfied in those situations. *See Colandrea v. Wilde Lake Cmty. Ass'n,* 361 Md. 371, 391, 761 A.2d 899 (2000).

In *Colandrea,* the Court of Appeals set forth a four-part test, "which must be satisfied in order for the doctrine of collateral estoppel to be applicable:

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?

2. Was there a final judgment on the merits?

3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?

4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?"

*Id.*

As hypothesized by Judge Hardwicke, if the alleged abuse or neglect in the F.L. § 5–706.1 hearing was not the same abuse or neglect adjudicated in the CINA proceeding, the collateral estoppel requirement of identity of the issues would not be met. Also, if the appellant in the F.L. § 5–706.1 hearing was not a party or in privity with a party in the CINA proceeding, collateral estoppel would not apply. Therefore, under our interpretation of F.L. § 5–706.1, an individual would have the right, under the Administrative Procedure Act, to file and prosecute an appeal of the Department's finding of indicated or unsubstantiated abuse or neglect unless precluded from doing so by the application of the doctrine of collateral estoppel.

 Finally, the doctrine of collateral estoppel, "or issue preclusion, began life and retains life as a common law doctrine." *Colandrea,* 361 Md. at 387, 761 A.2d 899 (quotations omitted). Statutes that derogate common law doctrines are to be "strictly construed, and it is not to be presumed that the legislature . . . intended to make any alteration in the common law other than what has been specified and plainly pronounced." *Gleaton v. State,* 235 Md. 271, 277, 201 A.2d 353 (1964). Therefore, because the General Assembly has not "specified and plainly pronounced" a derogation of the doctrine of collateral estoppel in a F.L. § 5–706.1 proceeding, we decline to read into F.L. § 5–706.1 an intent by the legislature to foreclose the application of the doctrine of collateral estoppel.

## II.

### *Tamara A.*

In *Tamara A. I,* this Court addressed the issue of whether a fully litigated finding in a CINA proceeding that Ms. A. neglected her child precluded Ms. A. from challenging the

indicated neglect finding before OAH. 178 Md.App. at 690, 943 A.2d 653. Ms. A. requested a contested case hearing before OAH after she was found responsible for indicated neglect of her child. *Id.* at 689, 943 A.2d 653. The Montgomery County Department of Health and Human Services ("MCDHHS") moved to dismiss the case based on collateral estoppel and argued that "the factual issue of whether Ms. A. had neglected [her child] had been fully litigated in the CINA proceeding." *Id.* at 693, 943 A.2d 653. The ALJ denied MCDHHS's motion to dismiss because it concluded that MCDHHS "had not established that the factual issue to be litigated in the administrative hearing was litigated in the prior CINA proceeding." *Id.* at 694, 943 A.2d 653. We disagreed with the ALJ and held that the issue that was to be decided at the contested case hearing, *i.e.,* "whether Ms. A. [wa]s responsible for indicated neglect," was the same issue that was decided at the CINA hearing. *Id.* at 701, 943 A.2d 653. Because there was no dispute that the other three factors necessary for collateral estoppel were present, we concluded that Ms. A. was precluded by the doctrine of collateral estoppel from litigating before the OAH MCDHHS's finding that she was responsible for indicated neglect. *Id.*

In *Tamara A. II,* the Court of Appeals granted certiorari to decide "whether an interlocutory order by an . . . ALJ[ ] that denied a motion to dismiss the administrative proceeding on the ground of collateral estoppel" could be immediately appealed. 407 Md. at 183, 963 A.2d 773. In holding that a denial of such motion could not be immediately appealed, the Court specifically stated that "the correctness of the ALJ's decision [wa]s not presently before [the Court]," and the Court did not determine whether collateral estoppel would preclude Ms. A.'s appeal from the indicated neglect finding. *Id.* at 183, 194, 963 A.2d 773. Instead, the Court recognized that, generally, "the statutory construct [of F.L. § 5–706.1] suggests that an appeal of a finding of indicated child abuse or neglect is not *necessarily* precluded by a CINA determination." *Id.* at 194, 963 A.2d 773 (emphasis added). The Court then stated that

F.L. § 5–706.1 *"does not necessarily preclude a collateral estoppel defense in a proper case." Id.* (emphasis added).

Contrary to Cosby's argument that the Court of Appeals "expressed a view that [F.L. §] 5–706.1 leans against collateral estoppel," *Tamara A. II* is in accord with our interpretation of F.L. § 5–706.1. The Court of Appeals' statement that "the statutory construct [of F.L. § 5–706.1] suggests that an appeal of a finding of indicated child abuse or neglect is not necessarily precluded by a CINA determination," 407 Md. at 194, 963 A.2d 773, comports with the 1995 amendment contained in House Bill 791, which struck F.L. § 5–706.1's requirement that an individual could challenge a finding of indicated or unsubstantiated abuse or neglect only where the CINA petition had been dismissed. The Court's determination that F.L. § 5–706.1 "does not necessarily preclude a collateral estoppel defense in a proper case," 407 Md. at 194, 963 A.2d 773, corresponds with our conclusion that the application of the doctrine of collateral estoppel to a F.L. § 5–706.1 hearing is neither prohibited by nor inconsistent with the statute's language and legislative history.

Therefore, in light of the statutory language and legislative history of F.L. § 5–706.1, as well as the applicable case law, we hold that the doctrine of collateral estoppel may be raised and applied in a F.L. § 5–706.1 hearing. Accordingly, the ALJ did not err in granting the Department's motion to dismiss.

**JUDGMENT OF CIRCUIT COURT FOR ALLEGANY COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO ENTER AN ORDER AFFIRMING THE DECISION OF THE OFFICE OF ADMINISTRATIVE HEARINGS; APPELLEE TO PAY COSTS.**