42 A.3d 596

### Johnette COSBY

v.

### DEPARTMENT OF HUMAN RESOURCES, Allegany County Department of Social Services.

**No. 74, Sept. Term, 2011.**

Court of Appeals of Maryland.

April 25, 2012.

630

Ramon Rozas, III (Friend & Rozas, LLC, Cumberland, MD), on brief, for petitioner.

Sandra Barnes, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for respondents.

Argued before BELL, C.J. HARRELL, GREENE, ADKINS, BARBERA, WILNER, ALAN M. (Retired, Specially Assigned), CATHELL, DALE R. (Retired, Specially Assigned), JJ.

GREENE, J.

Johnette Cosby ("Ms. Cosby" or "Petitioner") requested an administrative hearing to challenge a determination by the Allegany County Department of Social Services ("the Department" or "Respondent") that she was responsible for "indicated child neglect," a finding which would result in her placement into the Department's central registry of child neglectors. Prior to the hearing, her son was adjudicated to be a Child in Need of Assistance (CINA) based on the same allegations of neglect presented in the administrative action. As a result, the administrative law judge granted the Department's motion to dismiss Ms. Cosby's administrative appeal based on collateral estoppel. Ms. Cosby filed a petition for judicial review, arguing that amendments to Maryland Code (1984, 2006 Repl.Vol.) § 5–706.1 of the Family Law Article precluded application of the common law defense. The Circuit Court for Allegany County agreed and reinstated Ms. Cosby's administrative appeal, however, the Court of Special Appeals reversed that determination. *See Dep't of Human Res. v. Cosby*, 200 Md.App. 54, 24 A.3d 199 (2011). Upon review of the applicable statutory provision and prior appellate case law, we agree with the Court of Special Appeals that the provision was not amended so as to preclude the common law defense of collateral estoppel when the elements are otherwise satisfied. Petitioner concedes that the re-

quired elements of collateral estoppel are present in the instant case. Therefore, we shall hold that the dismissal of the administrative appeal was proper.

## FACTS AND PROCEDURAL HISTORY

On October 7, 2008, the Department notified Ms. Cosby that, following a Child Protective Services investigation, it had found her responsible for "indicated child neglect." As a result, Ms. Cosby's name would be placed into a central registry of child neglectors pursuant to Maryland Code (1984, 2006 Repl.Vol.) § 5–714(e) of the Family Law Article.[1] The underlying basis of the finding according to the Department's report, was that on September 23, 2008, Ms. Cosby had refused to allow Michael, her 17 year-old adoptive son, who was paralyzed from the waist down, to return home after he and Ms. Cosby's live-in paramour "got into a verbal altercation ... [that] became physical in nature." Ms. Cosby further refused to allow the Department to coordinate a voluntary placement and instead insisted that Michael be placed in foster care "as a punishment." Due to her refusal to either allow Michael to return home or to grant permission for him to live with a voluntary caregiver, the Department placed

---

1. The section provides:

 (e)(1) The Department or a local department may identify an individual as responsible for abuse or neglect in a central registry only if the individual:

 (i) has been found guilty of any criminal charge arising out of the alleged abuse or neglect; or

 (ii) has been found responsible for indicated abuse or neglect and has:

 1. unsuccessfully appealed the finding in accordance with the procedures established under § 5–706.1 of this subtitle; or

 2. failed to exercise the individual's appeal rights within the time frames specified in § 5–706.1 of this subtitle, Title 10, Subtitle 2 of the State Government Article, or the Maryland Rules.

 (2) The Department without the necessity of a request shall remove from the name of an individual described in paragraph (1) of this subsection the identification of that individual as responsible for abuse or neglect if no entry has been made for that individual for 7 years after the entry of the individual's name in a registry.

 § 5–714(e) of the Family Law Article.

Michael into shelter care and filed a CINA petition in the Circuit Court for Allegany County. On December 15, 2008, the Circuit Court granted the petition, adjudicated Michael to be a CINA[2] based on Ms. Cosby's neglect, and placed him in the care of the Department for transfer into foster care.[3]

Meanwhile, on December 1, 2008, Ms. Cosby challenged the Department's finding that she was responsible for "indicated child neglect," by filing a timely request for a contested case hearing before the Office of Administrative Hearings ("OAH") pursuant to § 5–706.1(b) of the Family Law Article. Following the CINA determination, Respondent moved to dismiss the administrative hearing on grounds of collateral estoppel, arguing that the Circuit Court's finding of neglect precluded Petitioner from challenging the Department's determination of "indicated child neglect" based upon the same facts.[4] Ms.

---

**2.** Maryland Code (1973, 2006 Repl. Vol.), § 3–801(f) of the Courts and Judicial Proceedings Article provides that a child may be deemed a CINA if the Court finds that "(1) [t]he child has been abused, has been neglected, has a developmental disability, or has a mental disorder, and (2)[t]he child's parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs." After reviewing supplemental briefings from the parties following the hearing, the Circuit Court judge determined that, although Michael had turned 18 in the time since the CINA petition was filed, Ms. Cosby had a continuing obligation to care for him due to his disability, and therefore, he could properly be labeled a CINA. *See* Md.Code (1984, 2006 Repl.Vol.) § 13–102(b) of the Family Law Article (providing that "[i]f a destitute adult child is in this State and has a parent who has or is able to earn sufficient means, the parent may not neglect or refuse to provide the destitute adult child with food, shelter, care, and clothing"); § 13–101(b) of the Family Law Article (defining "destitute adult child" as "an adult child who: (1) has no means of subsistence; and (2) cannot be self-supporting, due to mental or physical infirmity"). As the propriety of this decision is not directly before us, we need not address it here.

**3.** Ms. Cosby did not appeal the CINA determination.

**4.** As the intermediate appellate court noted, the Department asserted that the elements of collateral estoppel, explained *infra*, were met in the instant case because:

(1) it was a necessary condition precedent to a finding of CINA that the court find that the child had been neglected; (2) the court adjudicated Michael CINA and thus the issue of neglect was decided

Cosby filed an untimely opposition, arguing that amendments to § 5–706.1 of the Family Law Article made clear that a CINA finding does not bar a subsequent administrative appeal. The administrative law judge (ALJ) granted the motion based on collateral estoppel and dismissed the appeal in an order dated March 25, 2009.[5] In reaching this conclusion, the ALJ relied on the intermediate appellate court's decision in *Montgomery County Department of Health and Human Services v. Tamara A.*, 178 Md.App. 686, 943 A.2d 653 (2008) *[Tamara A. I]* which, as explained *infra*, held that CINA determinations do, in fact, preclude the re-litigation of issues presented in contested case hearings where the elements of common-law collateral estoppel are satisfied. *Tamara I*, 178 Md.App. at 700–01, 943 A.2d at 660–61. The ALJ stated that "[t]he Court [in *Tamara A. I* ] specifically noted that the definition of child neglect used in the CINA hearing was identical to the definition of child neglect applicable in neglect cases such as the present matter." The ALJ concluded, therefore, that collateral estoppel barred the contested case hearing because Ms. Cosby had the opportunity "at the CINA hearing to fully litigate the issues in question," as the CINA conclusion "was based on the same events giving rise to the child neglect investigation in the present case, *i.e.* the incident of September 23, 2008 wherein [Ms. Cosby] refused reentry of the [c]hild into [her] home."

On April 2, 2009, Petitioner filed a motion to reconsider, arguing that the ALJ's decision was incorrect because the

---

in the prior CINA litigation; (3) Cosby was properly before the court, had the benefit of counsel, and the opportunity to be heard on the issue during the CINA proceeding; (4) the finding of CINA was a final judgment; and (5) the CINA case involved the same parties as in the appeal before the OAH.

*Cosby,* 200 Md.App. at 59, 24 A.3d at 202.

**5.** As the ALJ explained, the effect of the dismissal of the hearing "automatically affirm[ed] the finding of indicated neglect...." *See* COMAR 07.02.26.13(C) ("Dismissal or voluntary withdrawal of an appeal or request for an appeal automatically affirms the local department's finding and, in the case of a finding of indicated abuse or neglect, the local department's right to identify the individual as responsible for child abuse or neglect in a central registry.").

Court of Appeals had reversed *Tamara A. I* prior to the administrative hearing in *Tamara A. v. Montgomery County Department of Health and Human Services,* 407 Md. 180, 963 A.2d 773 (2009) [*Tamara A. II* ]. The Department responded that, despite the reversal, *Tamara A. I* remained persuasive because this Court had specifically declined to review the merits of the decision, but, rather, vacated it as an improper interlocutory appeal. The ALJ agreed with the Department and reaffirmed its decision that Ms. Cosby's administrative action was barred as a matter of law by collateral estoppel.

Ms. Cosby then filed a petition for judicial review of the ALJ's decision with the Circuit Court for Allegany County.[6] On March 5, 2010, after a hearing, the Circuit Court reversed the ALJ's dismissal and remanded for further proceedings on the contested case based on its reading of both § 5–706.1 and *Tamara A. II.* While it recognized that this Court in *Tamara A. II* "declined to address the merits of the case," it interpreted certain dicta to suggest that Ms. Cosby "was entitled to further proceedings on her appeal." Therefore, according to the Circuit Court, "the ALJ's reliance upon the analysis and holding of *Tamara A. [I]* . . . was inappropriate in light of the Court of Appeals['s] reversal."

Following this decision, Respondent appealed to the Court of Special Appeals. That court reversed and held that dismissal was the appropriate disposition because collateral estoppel did, in fact, bar Cosby's administrative appeal. *Dep't of Human Res. v. Cosby,* 200 Md.App. 54, 24 A.3d 199 (2011). The intermediate appellate court based this conclusion on its interpretation of the legislative history surrounding the

---

**6.** Section 10–222(a) of the Maryland Administrative Procedures Act "provides, generally, that a party aggrieved by the final decision of a covered agency in a contested case is entitled to judicial review." *Tamara A. II,* 407 Md. at 183, 963 A.2d at 774 (citing Md.Code. (1984, 2009 Repl.Vol.), § 10–222(a) of the State Government Article); *see also Charles County Dep't of Soc. Servs. v. Vann,* 382 Md. 286, 294–95, 855 A.2d 313, 318 (2004) ("[A] challenge to the entry of one's name in a central registry as an 'indicated child abuser' . . . is a contested case within the meaning of the Maryland Administrative Procedure Act. . . .").

amendments to § 5–706.1, and its review of the *Tamara A.* decisions. The court made clear that *Tamara A. II* "did not determine whether collateral estoppel would preclude [an] appeal from [an] indicated neglect finding," but that dicta within the opinion was consistent with such a holding. *Cosby,* 200 Md.App. at 71–72, 24 A.3d at 209–10. We granted Petitioner's request for a writ of certiorari, *Cosby v. Soc. Servs.,* 422 Md. 352, 30 A.3d 193 (2011), to resolve the issues surrounding the interpretation of § 5–706.1 and the *Tamara A.* decisions, and now address the following question, as restated by the intermediate appellate court:

> Where there was a prior finding of child neglect in a CINA case to which Cosby was a party, did the ALJ err in a subsequent administrative proceeding when he granted the Department's motion to dismiss Cosby's appeal of the Department's finding of indicated child neglect based on collateral estoppel?

We answer that question in the negative, and therefore affirm the judgment of the Court of Special Appeals, as the administrative appeal was properly dismissed on grounds of collateral estoppel.

## STANDARD OF REVIEW

■■ The instant case presents an action for judicial review of an administrative decision. In such cases, the Court of Appeals "take[s] the same posture as the circuit court or the intermediate appellate court, and [we] limit our review to the agency's decision." *Anderson v. General Casualty,* 402 Md. 236, 244, 935 A.2d 746, 751 (2007) (citation omitted); *accord MVA v. Shea,* 415 Md. 1, 17, 997 A.2d 768, 777 (2010) ("[O]ur role is not to review the [c]ircuit [c]ourt's judgment, but rather to review the decision of the ALJ...."); *Charles County Dep't of Soc. Servs. v. Vann,* 382 Md. 286, 294, 855 A.2d 313, 318 (2004) (noting that this Court "reevaluate[s] the decision of the agency under the same statutory standards as would the circuit court, and we do not employ those standards to reevaluate the decision of the circuit or intermediate appellate court" (citations omitted)). As we explained in *Board of*

*Physician Quality Assurance v. Banks,* 354 Md. 59, 67–68, 729 A.2d 376, 380 (1999):

A court's role in reviewing an administrative agency adjudicatory decision is narrow, it is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law.

*Id.* (internal quotations omitted) (citations omitted).

Indeed, we have said that "[i]f there is a need to articulate a 'standard' for judicial review of an agency's legal rulings, it is sufficient to say that a reviewing court must determine if the administrative decision is premised upon an erroneous conclusion of law." *Md. Aviation Admin. v. Noland,* 386 Md. 556, 574 n. 3, 873 A.2d 1145, 1156 n. 3 (2005) (internal quotation omitted). We recently explained in *People's Insurance v. Allstate,* 424 Md. 443, 36 A.3d 464 (2012), that "[w]hether [a] statute applies and, if so, how it should be interpreted, are questions of law, and, although an agency's interpretation and application of a statute that it administers ordinarily is given considerable weight by reviewing courts, the court must make the ultimate legal determination." *People's Insurance,* 424 Md. at 457, 36 A.3d at 472; *accord Bayly Crossing, LLC v. Consumer Prot. Div.,* 417 Md. 128, 137, 9 A.3d 4, 9 (2010) ("Interpreting the pure meaning of a statute is deemed a question of law ... however, we frequently give weight to an agency's experience in interpretation of a statute that it administers." (internal citations and quotations omitted)); *Motor Vehicle Admin. v. Jaigobin,* 413 Md. 191, 196–97, 991 A.2d 1251, 1254 (2010) ("Although ... an administrative agency's interpretation and application of [a] statute which the agency administers should ordinarily be given considerable weight ... the correct interpretation of the applicable statutes presents a question of law that this Court must decide by applying the ... principles of statutory construction ...." (internal quotation omitted)); *Anderson,* 402 Md. at 244–245, 935 A.2d at 751 ("As to conclusions of law, we give significant weight to an agency's experience in interpreting a statute the agency ad-

ministers. Nonetheless, if an agency has made an erroneous conclusion of law, it is our duty to correct that conclusion." (internal citation omitted)).

In the instant case, the ALJ granted the Department's motion to dismiss based on collateral estoppel, implicitly interpreting § 5–706.1, a statute that the Department administers, as not precluding the common law defense. We now review this determination for legal error, giving appropriate weight to the Department's interpretation of the statute. *See Motor Vehicle Admin. v. Aiken,* 418 Md. 11, 27, 12 A.3d 656, 665 (2011).

## DISCUSSION

We have commented that "[c]ollateral estoppel, or issue preclusion, began life and retains life as a common law doctrine." *Colandrea v. Wilde Lake Cmty. Ass'n,* 361 Md. 371, 387, 761 A.2d 899, 907 (2000) (quotation omitted). Under the doctrine, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Murray Int'l Freight Corp. v. Graham,* 315 Md. 543, 547, 555 A.2d 502, 504 (1989) (quotation omitted). Maryland adheres to a four-part test for the application of collateral estoppel, which we explained in *Colandrea v. Wilde Lake Community Association:*

1. Was the issue decided in the prior adjudication identical with the one presented in the action in question?
2. Was there a final judgment on the merits?
3. Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?
4. Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?

*Colandrea,* 361 Md. at 391, 761 A.2d at 909.

## I.

The Court of Special Appeals's holding in *Tamara A. I,* 178 Md.App. 686, 943 A.2d 653 (2008) and this Court's subsequent

reversal in *Tamara A. II*, 407 Md. 180, 963 A.2d 773 (2009) provide a background for the question that is now squarely before this Court, namely, the proper construction of § 5-706.1 of the Family Law Article as it applies to collateral estoppel and CINA proceedings.

*Tamara A. I* involved facts relatively similar to those at bar. In that case, the Department notified Tamara A. that it had found her to be responsible for indicated neglect of her newborn, based on the same untreated psychological condition that had led to previous CINA adjudications regarding her older children. Tamara A. appealed the Department's finding by requesting a contested case hearing before the OAH. Meanwhile, the newborn was adjudicated to be a CINA by the Circuit Court for Montgomery County based on Tamara A.'s neglect. See Md.Code 3–801(f) of the Courts and Judicial Proceedings Article. Following the CINA determination, the Department filed a motion to dismiss the administrative proceeding, arguing that the issue of neglect had been fully litigated during the CINA proceeding and that Tamara A. was, therefore, collaterally estopped from challenging the Department's finding based upon the same facts. The ALJ denied the motion to dismiss.[7] The Department filed a petition for judicial review, which the Circuit Court, and subsequently, the intermediate appellate court granted. On the merits, the Circuit Court affirmed the ALJ's denial of the

---

7. As the intermediate appellate court explained in *Tamara A. I*, the ALJ did not base the decision on a determination that collateral estoppel was abrogated under § 5–706.1, but, rather, on the fact that the CINA determination was founded on past conduct towards older children rather than "actual neglect" of the newborn. The ALJ evidently reasoned that a finding of indicated child neglect required actual harm to that child, and therefore, collateral estoppel did not apply to the administrative appeal because the Department had not established that the neglect issue had, in fact, been established in the CINA proceeding. *See Tamara A. I*, 178 Md.App. at 694–95, 943 A.2d at 657. As we stated in *Tamara A. II*, "notwithstanding that the definition of 'neglect' for purposes of the instant proceeding was the same as for the CINA case, [the ALJ] found that entry into the registry had to be based on some actual abuse or neglect, not merely the potential for it." 407 Md. at 186, 963 A.2d at 776.

motion to dismiss; however, the Court of Special Appeals reversed.

The intermediate appellate court concluded that because the issue of neglect was fully litigated and resolved in the CINA proceeding, the ALJ should have granted the motion to dismiss the administrative action based on collateral estoppel. *Tamara A. I*, 178 Md.App. at 697–701, 943 A.2d at 659–61. The only element of the doctrine that was in dispute was whether the finding of neglect in the CINA proceeding was identical to the finding of neglect required in the administrative appeal. *Tamara A. I*, 178 Md.App. at 698, 943 A.2d at 659. The court made clear that "neglect" was "defined in precisely the same terms," under both the CINA statute, Maryland Code (1973, 2006 Repl. Vol.) § 3–801(s) of the Courts and Judicial Proceedings Article, and the child abuse and neglect statute, § 5–701(s) of the Family Law Article.[8]

---

8. It is true that "neglect," carries a nearly identical definition in the statutes. The CINA provision defines "neglect" in the following manner:

> (s) "Neglect" means the leaving of a child unattended or other failure to give proper care and attention to a child by any parent or individual who has permanent or temporary care or custody or responsibility for supervision of the child under circumstances that indicate:
> (1) That the child's health and welfare is harmed or placed at substantial risk of harm; or
> (2) That the child has suffered mental injury or been placed at substantial risk of mental injury.

Md.Code § 3–801(s) of the Courts and Judicial Proceedings Article. The definition of "neglect" under the child abuse and neglect provision contains only nearly imperceptible stylistic differences:

> (s) "Neglect" means the leaving of a child unattended or other failure to give proper care and attention to a child by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of the child under circumstances that indicate:
> (1) that the child's health or welfare is harmed or placed at substantial risk of harm; or
> (2) mental injury to the child or a substantial risk of mental injury.

Md.Code § –701(s) of the Family Law Article. A determination that abuse or neglect is "indicated" means "a finding that there is credible evidence, which has not been satisfactorily refuted, that abuse, neglect, or sexual abuse did occur." Md.Code § 5–701(m) of the Family Law Article.

*Tamara A. I,* 178 Md.App. at 699–700, 943 A.2d at 660. Therefore, according to the court, the determination of neglect in the CINA case was "identical to the Department's finding that Ms. A. [was] responsible for indicated neglect. . . ." *Tamara A. I,* 178 Md.App. at 700, 943 A.2d at 660. Although the statutes and proceedings differed in some respects, the court noted that:

> Collateral estoppel does not require that the prior and present proceedings have the same purpose, nor does it mandate that the statutes upon which the proceedings are based have the same goals. The relevant question is whether the fact or issue was actually litigated and decided in a prior proceeding, regardless of the cause of action or claim. If the answer to that question is yes, then, assuming that the remaining factors of the doctrine have been met, collateral estoppel bars re-litigation of the issue.

*Tamara A. I,* 178 Md.App. at 701, 943 A.2d at 661 (footnote omitted) (internal citation omitted).[9] Thus, the court concluded that "[t]hough the law grants Ms. A. the right to a contested case hearing to have the ALJ decide whether [the] standard has been satisfied, Ms. A. is not entitled to have the finding of neglect decided anew." *Tamara A. I,* 178 Md.App. at 700, 943 A.2d at 660.

This Court reversed *Tamara A. I* in *Tamara A. II,* 407 Md. 180, 963 A.2d 773 (2009), on the grounds that it was an improper interlocutory appeal, unauthorized by Maryland Code, § 10–222(b) of the State Government Article. *Tamara A. II,* 407 Md. at 194–95, 963 A.2d at 781 ("The ruling here did not determine any rights or liabilities of the parties . . . nor did it have any immediate legal consequences."). Indeed, the sole issue presented in *Tamara A. II* was whether the denial of the motion to dismiss was subject to immediate judicial review and we explicitly declined to address whether the ALJ's decision was correct. *Tamara A. II,* 407 Md. at 187, 963 A.2d at 777. Both parties in the instant case, however,

---

9. As the Circuit Court in the instant case noted, the Court of Special Appeals did not specifically interpret § 5–706.1 in *Tamara A. I.*

point to a particular section of the opinion, which commented on § 5–706.1, as supporting their respective arguments regarding its proper construction. We stated in *Tamara A. II:*

> Indeed, although the correctness of the ALJ's decision is not presently before us, the statutory construct itself suggests that an appeal of a finding of indicated child abuse or neglect is not necessarily precluded by a CINA determination. FL § 5–706.1(a) requires DHHS to notify the individual alleged to have abused or neglected a child of its finding and of the opportunity to appeal the finding.
>
> FL §§ 5–706.1(b)(3) and (4) require OAH to stay a hearing in such an appeal if either criminal charges based on the alleged abuse or neglect or a CINA proceeding is pending, until any such proceeding is concluded. If the individual is found guilty of criminal charges arising out of the alleged abuse or neglect, OAH must dismiss the administrative appeal. FL § 5–706.1(b)(3)(ii). Conviction, in other words, *does* act as an absolute statutory bar to further prosecution of the administrative appeal. That is not the case with respect to a CINA proceeding, however. In sharp contrast, § 5–706. 1(b)(4)(ii) provides that "[a]fter the conclusion of the CINA case, the [OAH] shall vacate the stay and schedule further proceedings in accordance with this section." Although that provision does not necessarily preclude a collateral estoppel defense in a proper case, it certainly does not support DHHS's argument that the administrative proceeding must be put on indefinite hold in favor of immediate judicial review if such a defense is rejected by the ALJ.

*Tamara A. II,* 407 Md. at 194–95, 963 A.2d at 781 (emphasis in original) (footnotes omitted). Of course, from this language Petitioner emphasizes the words "the statutory construct [of § 5–706.1] itself suggests that an appeal of a finding of indicated child abuse or neglect is not necessarily precluded by a CINA determination." 407 Md. at 194, 963 A.2d at 781. Respondent, by contrast, quotes the subsequent line, which states that § 5–706.1 "does not necessarily preclude a collateral estoppel defense in a proper case. . . ." *Id.*

■ These arguments regarding the proper construction of § 5–706.1 are now squarely before this Court because, unlike the situation presented in *Tamara A. I*, the disposition on the motion to dismiss in the instant case was immediately appealable. *See Miller & Smith v. Casey PMN*, 412 Md. 230, 243, 987 A.2d 1, 8 (2010) ("We have held that an unqualified order granting a motion to dismiss ... puts the plaintiffs out of court, and terminates the particular action in the trial court, is final and appealable." (citations omitted)).

## II.

As a preliminary matter, Petitioner concedes that if § 5–706.1 does not prevent the assertion of collateral estoppel based on a previous CINA finding, then Ms. Cosby was properly precluded from re-litigating the issue of neglect before the OAH because all of the elements of the doctrine would be satisfied.

■ In interpreting a statute, our goal is always to "ascertain and effectuate the intent of the Legislature." *Breslin v. Powell*, 421 Md. 266, 286, 26 A.3d 878, 891 (2011) (quotation omitted). In attempting to discern that intent, courts "look first to the plain language of the statute, giving it its natural and ordinary meaning." *Id.* (quotation omitted). "If the language is clear and unambiguous, our search for legislative intent ends and we apply the language as written and in a commonsense manner." *Downes v. Downes*, 388 Md. 561, 571, 880 A.2d 343, 349 (2005). Where, however, "the meaning of the plain language of the statute, or the language itself, is unclear, we seek to discern legislative intent from surrounding circumstances, such as legislative history, prior caselaw, and the purposes upon which the statutory framework was based." *CWA v. Public Service Commission*, 424 Md. 418, 440, 36 A.3d 449, 462 (2012) (quotation omitted); *accord Gardner v. State*, 420 Md. 1, 9, 20 A.3d 801, 806 (2011) ("Where the words of a statute are ambiguous and subject to more than one reasonable interpretation ... a court must resolve the ambiguity by searching for legislative intent in

other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." (quotation omitted)).

 Additionally, and particularly applicable in the instant case, "[s]tatutes in derogation of the common law are strictly construed, and it is not to be presumed that the [L]egislature by creating statutory assaults intended to make any alteration in the common law other than what has been specified and plainly pronounced." *Breslin*, 421 Md. at 287, 26 A.3d at 891 (quotation omitted); *see Witte v. Azarian*, 369 Md. 518, 533, 801 A.2d 160, 169 ("Most statutes, of course, change the common law, so that principle necessarily bends when there is a clear legislative intent to make a change.").

 The statute at issue, Md.Code § 5–706.1 of the Family Law Article, as currently enacted, reads in pertinent part:

(a) Within 30 days after the completion of an investigation in which there has been a finding of indicated or unsubstantiated abuse or neglect, the local department shall notify in writing the individual alleged to have abused or neglected a child:

(1) of the finding;

(2) of the opportunity to appeal the finding in accordance with this section; and

(3) if the individual has been found responsible for indicated abuse or neglect, that the individual may be identified in a central registry as responsible for abuse or neglect under the circumstances specified in § 5–714(e) of this subtitle.

(b)(1) In the case of a finding of indicated abuse or neglect, an individual may request a contested case hearing to appeal the finding in accordance with Title 10, Subtitle 2 of the State Government Article by responding to the notice of the local department in writing within 60 days.

\* \* \*

(3)(i) If a criminal proceeding is pending on charges arising out of the alleged abuse or neglect, the Office of Administra-

tive Hearings shall stay the hearing until a final disposition is made. (ii) If after final disposition of the criminal charge, the individual requesting the hearing is found guilty of any criminal charge arising out of the alleged abuse or neglect, the Office of Administrative Hearings shall dismiss the administrative appeal.

(4)(i) If a CINA case is pending concerning a child who has been allegedly abused or neglected by the appellant or a child in the care, custody, or household of the appellant, the Office of Administrative Hearings shall stay the hearing until the CINA case is concluded.

(ii) After the conclusion of the CINA case, the Office of Administrative Hearings shall vacate the stay and schedule further proceedings in accordance with this section.

Under the statute, an individual may appeal the Department's determination of indicated child neglect by requesting a hearing before the OAH in accordance with the contested case subtitle of the Maryland Administrative Procedure Act. Md.Code (1984, 2009 Repl.Vol.) §§ 10–201 to 227 of the State Government Article. Also, a pending CINA case involving the child requires the OAH to stay the hearing until the CINA case is concluded, and thereafter "schedule further proceedings." Beyond this procedural directive, however, the statute does not explain whether a CINA finding of neglect may have a preclusive effect on appellant's administrative appeal. Therefore, it is necessary to examine the statute's legislative history in order to ascertain the legislative intent.

The statute was originally enacted in 1993, and read in pertinent part:

(a) Within 30 days after the completion of an investigation in which there has been a finding of indicated or unsubstantiated abuse or neglect, the local department shall notify in writing the person alleged to have abused or neglected a child:

(1) of the finding; and

(2) **except when a CINA petition has been filed involving the child alleged to be abused or neglected,** that the

person may request an administrative hearing to appeal the finding.

(b) **Within 30 days of a dismissal of a CINA petition,** the local department of social services shall notify in writing the person alleged to have abused or neglected a child that the person may request an administrative hearing to appeal the finding.

\* \* \*

(g) If a criminal proceeding is pending on charges arising out of the alleged abuse or neglect, the Office of Administrative hearings shall stay the hearing until a final disposition is made.

(h) If after final disposition of the criminal charge, the person requesting the hearing is found guilty of any criminal charge arising out of the alleged abuse or neglect, the Office of Administrative Hearings shall dismiss the administrative appeal.

Md.Code (1984, 1991 Repl.Vol., 1993 Supp.) § 5–706.1 of the Family Law Article. (emphasis added). It is clear that, under the original language there was no right to appeal from an indicated or unsubstantiated abuse or neglect finding if a CINA petition had been filed regarding the alleged abused or neglected child, unless and until that petition was dismissed. In other words, the filing of a CINA petition functioned as an absolute bar to an appeal of an abuse or neglect finding.

The General Assembly amended the statute in 1995 "[f]or the purpose of altering the procedures applicable to child abuse and neglect hearings that involve a Child in Need of Assistance (CINA) proceeding...." Chapter 570 of the Acts of 1995. The pertinent portion of the amendments read [10] as follows:

(a) Within 30 days after the completion of an investigation in which there has been a finding of indicated or unsubstan-

---

**10.** As the intermediate appellate court pointed out, the brackets denote deletion, while capital letters indicate language that was added to the statute.

tiated abuse or neglect, the local department shall notify in writing the person alleged to have abused or neglected a child:

(1) of the finding; and

(2) [except when a CINA petition has been filed involving the child alleged to be abused or neglected,] that the person may request an administrative hearing to appeal the finding.

[ (b) Within 30 days of a dismissal of a CINA petition, the local department of social services shall notify in writing the person alleged to have abused or neglected a child that the person may request an administrative hearing to appeal an indicated or unsubstantiated finding.]

\* \* \*

(H)(1) IF A CINA PROCEEDING IS PENDING CONCERNING A CHILD WHO HAS BEEN ALLEGEDLY ABUSED OR NEGLECTED BY THE APPELLANT OR A CHILD IN THE CARE, CUSTODY, OR HOUSEHOLD OF THE APPELLANT, THE OFFICE OF ADMINISTRATIVE HEARINGS SHALL STAY THE HEARING UNTIL THE CINA PROCEEDING IS CONCLUDED.

(2) AFTER THE CONCLUSION OF THE CINA PROCEEDING, THE OFFICE OF ADMINISTRATIVE HEARINGS SHALL VACATE THE STAY AND SCHEDULE FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS SECTION AND § 5–706.2 OF THIS SUBTITLE.

The amendments make clear that the filing of a CINA petition regarding the child allegedly abused or neglected no longer functions to bar an appeal of an abuse or neglect finding. There are no indicia in the legislative history, however, of an intent to abrogate common law collateral estoppel in cases where the doctrine would otherwise be satisfied.

The General Assembly's Department of Fiscal Services' fiscal note for the bill reads:

This amended bill allows a person involved in a Child in Need of Assistance (CINA) proceeding to appeal to the Office of Administrative Hearings (OAH) a finding of indicated or unsubstantiated child abuse or neglect after the CINA proceeding has concluded. At present, a person involved in a CINA proceeding may only appeal a finding of child abuse or neglect if the CINA proceeding was dismissed.

Dep't of Fiscal Servs., Revised Fiscal Note, H.B. 791 (1995).

The Bill Analysis prepared by the Senate Judicial Proceedings Committee of the General Assembly provides:

**SUMMARY OF BILL:**

This bill allows a person who is alleged to have abused or neglected a child who is the subject of a child in need of assistance (CINA) proceeding to immediately appeal to the Office of Administrative Hearings (OAH) a finding made by the local department of social services of indicated or unsubstantiated child abuse or neglect and allows the OAH to stay the hearing on the appeal until after the CINA proceeding is concluded.

**BACKGROUND:**

Under current law, a person alleged to have abused or neglected a child may appeal a finding of indicated or unsubstantiated child abuse or neglect. However, if a CINA petition has been filed involving the child alleged to be abused or neglected, the person may appeal to the OAH only if the CINA proceeding is dismissed.

The bill provides a person alleged to have abused or neglected a child with the ability to appeal a finding regardless of whether the CINA proceeding is dismissed or otherwise concluded, unless the person is convicted of a criminal offense arising from the alleged abuse or neglect.

Senate Judicial Proceedings Comm., Bill Analysis, H.B. 791 (1995).

Also included in the bill file is a letter from then-Chief Administrative Law Judge John W. Hardwicke, dated March 24, 1995, to Senator Walter M. Baker, Chair of the Senate

Judicial Proceedings Committee. The letter communicates OAH's support for the bill, characterizing it in the following manner:

> HB 791 corrects an oversight in the existing law governing child abuse and neglect hearings. Current law permits the [child abuse and neglect] hearing to proceed only if the CINA proceeding is dismissed. If a child is adjudicated CINA, OAH has no authority to proceed with the hearing. This has caused some difficulties, *particularly when the appellant for the* [child abuse and neglect] *hearing is not involved in the CINA proceeding or when the matters at issue in the* [child abuse and neglect] *hearing are not adjudicated or resolved during the CINA proceeding.*
>
> For example, a child is adjudicated CINA due to the neglect of the mother, but the mother's boyfriend has appealed the local department's identification of him as an alleged abuser in an indicated or unsubstantiated sex abuse finding. Under existing law, the boyfriend's [child abuse and neglect] hearing cannot proceed because the CINA proceeding was not dismissed even though the sex abuse issue may never have been discussed during the CINA proceeding. With the passage of HB 791, OAH would be able to proceed with the boyfriend's [child abuse and neglect] hearing after the CINA proceeding concludes.

(emphasis added).

The intermediate appellate court concluded from this legislative history that the purpose of the 1995 amendments "was to address the inequity created by FL § 5–706.1 when an individual was denied the right to appeal the Department's finding of indicated or unsubstantiated abuse or neglect, because the child ... was determined to be [a] CINA, even though the specific issue of abuse or neglect involving the individual was not litigated in the CINA proceeding or the individual was not a party to the CINA proceeding." *Dep't of Human Res. v. Cosby*, 200 Md.App. 54, 68–69, 24 A.3d 199, 207–08 (2011). Petitioner, however, disagrees with this analysis and argues that the amendments to § 5–706.1 precluded the defense of collateral estoppel based on a previous CINA

finding because, the "removal [of the requirement that a CINA proceeding be dismissed prior to an administrative hearing] was not limited to parties, types of cases, or any other qualifiers ... no exception was inserted for 'common law collateral estoppel.'" Petitioner urges that "[h]ad the legislature intended to allow administrative hearings only for nonparties, a simple clause would have sufficed."

Contrary to Petitioner's position, under our reading of the statutory amendments and legislative history, it is clear that the amendments did, in fact, work to correct an inherent inequity in the original legislation. Prior to the amendments, if a CINA petition had been filed involving the child victim, the alleged maltreator could not appeal unless and until the CINA petition was dismissed, irrespective of the possibility that he or she may not have been a party to the CINA proceeding or that the facts presented in the CINA petition may have differed from those supporting the Department's finding. Therefore, as Respondent points out, "the prior statute exceeded the contours of collateral estoppel to bar appeals that would not be precluded under the common law doctrine," due either to a lack of identity of the parties or of the issues. The amendments removed this overreach in order to comport with, rather than prohibit, the common law defense, allowing an ALJ to apply the doctrine in a proper case. *See Cosby,* 200 Md.App. at 69–70, 24 A.3d at 208–09 (reasoning that "the General Assembly has not 'specified and plainly pronounced' a derogation of the doctrine of collateral estoppel" in § 5–706.1 proceedings); *Breslin,* 421 Md. at 287, 26 A.3d at 891 (noting that "[s]tatutes in derogation of the common law are strictly construed, and it is not to be presumed that the [L]egislature by creating statutory assaults intended to make any alteration in the common law other than what has been specified and plainly pronounced." (quotation omitted)).

Petitioner asserts that the ALJ's dismissal and the intermediate appellate court's decision in the instant case are inconsistent with this Court's decision in *Tamara A. II,* 407 Md. 180, 963 A.2d 773 (2009). As previously noted, however, we did not reach the question of collateral estoppel in that case, but

instead limited our holding to making clear that the appeal itself was premature. *Tamara II*, 407 Md. at 187, 963 A.2d at 777. Therefore, the administrative law judge was properly persuaded by the *Tamara A. I* commentary on collateral estoppel, because our decision in *Tamara A. II* did not reach the issue. *See West v. State*, 369 Md. 150, 157, 797 A.2d 1278, 1282 (2002) (explaining that an intermediate appellate opinion underlying a judgment, which is later vacated on another ground, may still constitute persuasive authority). Further, our comment in *Tamara A. II* that "the statutory construction itself suggests that an appeal of a finding of indicated child abuse or neglect is not necessarily precluded by a CINA determination," *Tamara A. II*, 407 Md. at 194, 963 A.2d at 781, is consistent with our holding today, namely, that while a CINA finding does not act as a *per se* bar to an administrative appeal, it can be preclusive where the elements of collateral estoppel are met. As we also suggested in *Tamara A. II*, § 5–706.1 "does not necessarily preclude a collateral estoppel defense in a proper case." *Id.* The instant case is a proper case.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONER.**